**FOWLER MANUFACTURING COMPANY, a corporation, Appellant,**

v.

**H. H. GORLICK et al., Appellees and Cross-Appellants.**

**Nos. 22121, 22121–A.**

United States Court of Appeals Ninth Circuit.

Aug. 15, 1969.

Rehearing Denied in No. 22121 Sept. 25, 1969.

Leo M. Koenigsberg (argued), of Koenigsberg, Brown & Sinsheimer, Seattle, Wash., for appellant and cross-appellees.

Edward M. Bensussen (argued), of Franco, Asia, Bensussen & Coe, Seattle, Wash., for appellees and cross-appellants.

Before JOHNSEN *, MERRILL and CARTER, Circuit Judges.

JOHNSEN, Senior Circuit Judge.

Can the amount of a discrimination in prices or allowances between business competitors be recovered under the Robinson-Patman Act as direct damages? 15 U.S.C. § 13 and § 15.

In the case before us Judge Lindberg of the Western District of Washington, on a jury-waived trial, found that such discriminations had been engaged in by a manufacturer of electric water heaters against a jobber of plumbing supplies in the amount of $8,540.60 and awarded judgment on this basis against the manufacturer for treble damages in the sum of $25,621.80.

We affirm.

### I.

The general question posed has not been adjudicatively passed upon by the Supreme Court. The lower federal courts have been divided on it. The two leading cases on the opposing views are Elizabeth Arden Sales Corporation v. Gas Blass Co., 150 F.2d 988, 161 A.L.R. 370 (8 Cir. 1945), and Enterprise Industries, Inc., v. Texas Co., 240 F.2d 457 (2 Cir. 1957).

Arden held that the amount of such a discrimination can properly be made the basis and measure of a general damage award, where the evidence does not establish a greater consequential or special injury. It took the view that, within legal and commercial realities, the non-favored customer would at least "be injured in his business or property". 15 U.S.C. § 15, to the extent of the diminution or deprivation thus occasioned to his treasury, or asset position.

Enterprise held, in an opinion written by Judge Learned Hand, that no such direct damage award is entitled to be made under the Act; that the non-favored customer is required to prove consequential injury to his business in loss of customers or profits; and that only such injury can be made the basis and measure of any recovery for a discrimination.[1]

We note that in this Circuit Judge Solomon of the District of Oregon has previously taken an opposite view to that of Judge Lindberg, and has followed the Enterprise holding. Youngson v. Tidewater Oil Co., 166 F.Supp. 146 (D.C.Or. 1958). It further may be observed that denial of certiorari was made by the Supreme Court in both the Arden case, 326 U.S. 773, 66 S.Ct. 231, 90 L.Ed. 467, and the Enterprise case, 353 U.S. 965, 77 S.Ct. 1049, 1 L.Ed.2d 914.

But while the Supreme Court has not undertaken to adjudicatively resolve the question, it has engaged in some expression thereon in the rationalization which it made in relation to the Robinson-Patman Act of the result reached by it in Bruce's Juices, Inc. v. American Can Co.,

---

* Harvey M. Johnsen, Senior Circuit Judge of the Eighth Circuit, sitting by designation.

1. It should be mentioned that Judge Hand suggested in Enterprise that the holding of Arden may have been overruled by the later case of American Can Co. v. Russellville Canning Co., 191 F.2d 38 (8 Cir. 1951). But Russellville expressly declared (p. 55); "We do not doubt that, ordinarily, where a seller is guilty of unlawful discrimination in prices between customers, the amount of the price

difference is the measure of damages * * * ". On the peculiarities, however, which a majority of the panel felt had existed as to freight equalization in that case, it regarded the plaintiff as not being entitled to any recovery on that aspect in the particular situation and therefore added to its general declaration, quoted above, the statement "but we think that this is not so here". See also Mr. Justice Jackson's phrase, "in the absence of extraordinary circumstances", in the quotation later made herein from the case of Bruce's Juices.

330 U.S. 743, 67 S.Ct. 1015, 91 L.Ed. 1217 (1947). In that case American had sued Bruce's upon some renewal notes covering part of the purchase price of some cans, to which Bruce's had set up the defense that the sales had been the subject of an illegal price-discrimination against it; that the price balance sought to be recovered was substantially equivalent to the amount of the discrimination; and that American therefore was without legal entitlement, either to maintain an action or in any event to claim the existence of any purchase-price balance in the situation.

The Court held, however, that under the Robinson-Patman Act a price discrimination does not have the effect of making the contract of sale or a note given for the purchase price intrinsically illegal so as not to permit of a recovery thereon (which, as the opinion recognized, it is possible for some contracts to be under the Sherman Act); that neither does Robinson-Patman authorize its triple-damage remedy to be used collaterally as a defense otherwise against the purchase price agreed to be paid; and that the price discrimination claimed by Bruce's could therefore only be made the subject of an independent action for triple damages, since "the violation, if there was one, is not inherent in the contract sued upon, whether it be the notes or the sale of the goods, but can only be found in different transactions which a party to the litigation had with third persons who are not parties". 330 U.S. at 755–756, 67 S.Ct. at 1021.

Mr. Justice Jackson went on to declare that "these characteristics show that the entire basis for judging under the two Acts is different and that the case law as to the Sherman Act does not fit the Robinson-Patman Act." *Ibid.* He took note that Bruce's had in fact instituted an independent triple-damage suit in respect to the situation and then engaged in expression as to the nature of the remedy which would be available to it therein. The opinion stated (330 U.S. at 757, 67 S.Ct. at 1021–1022):

"We have assumed for the purposes of this case that petitioner could establish that the prices respondent charged were discriminatory so that they violated the Act. But if petitioner can show that, clearly it would be entitled to recovery in a triple-damage suit supported by the same evidence. For despite petitioner's plaint on the difficulty of proving damages, it would establish its right to recover three times the discriminatory difference without proving more than the illegality of the prices. If the prices are illegally discriminatory, petitioner has been damaged, in the absence of extraordinary circumstances, at least in the amount of that discrimination".

It will be noted that these statements were made as an answer to Bruce's "plaint on the difficulty of proving damages" and to its argument on that basis against being relegated to the burden of a triple-damage suit. With the utterance having this context, and in the light of the further declaration that "the case law as to the Sherman Act does not fit the Robinson-Patman Act", we think the Court's statement as to Bruce's "right to recover three times the discriminatory difference without proving more than the illegality of the prices" must be regarded as a considered, intended and indicative expression on the nature of the damage right under the Robinson-Patman Act.

Furthermore, in a construction of the Act in relation to its purpose, it would seem apparent that such a direct-damage right would more effectively serve to curb the discriminations which Congress viewed as being most often exercised against smaller competitors, and whose abolition it sought to accomplish primarily for that reason, than the more difficult consequential-damage rule of the *Enterprise* case. In its significance for obtaining compliance with the Robinson-Patman Act, such a damage thrust is also more fully consonant with the motive which the Court recognized in *Bruce's* as underlying all private antitrust recovery, when it said: "It is clear Congress intended to use private self-in-

terest as a means of enforcement and to arm injured persons with private means to retribution when it gave to any injured party a private cause of action in which his damages are to be made good threefold, with costs of suit and reasonable attorney's fee". 330 U.S. at 751–752, 67 S.Ct. at 1019.

■■■■■ On all this, we are unable to see any reason for legalistically equating or construing the Robinson-Patman Act upon identical lines with the Sherman Act as to the form of its remedial damage rights.[2] We thus have no difficulty in agreeing with Judge Lindberg, and we hold that under the Robinson-Patman Act, unless the evidence establishes a greater consequential injury, discrimination in prices or allowances is entitled to be regarded as constituting a direct business injury and that the amount thereof thus properly can be made the basis and measure of a general damage award.[3]

## II.

A few more details as to the parties and the situation involved will be stated.

The suit was one by two partners (H. H. Gorlick and Morris Gorelick) operating under the trade name of Thrifty Supply Co. and under the guise of four corporate structures, each similarly bearing the name of Thrifty Supply Co., but having added to its title the name of the city in which the particular establishment was located. It was stipulated that the five businesses should be treated as constituting a single entity, and the plaintiffs will therefore be referred to here simply as Thrifty.

The named defendants were Fowler Manufacturing Co. (herein Fowler), a subsidiary of Republic Transcon Industries, Inc., and the three principal business competitors of Thrifty (herein Keller, Rosen and Mesher).

Beyond the Robinson-Patman claim made against Fowler, as discussed above, claims also were asserted by Thrifty against both Fowler and the other defendants for violations of the Sherman Act and the Clayton Act, but these claims were dismissed by the court and no cross-appeal has been taken by Thrifty from this action.

Claims further were made against Keller, Rosen and Mesher that each had been the recipient of some or all of the favored prices and allowances involved, with knowledge on the part of each of them that Fowler was engaging in dis-

2. While it is not material here, it may be noted that no distinction was drawn in *Bruce's* between § 13 and § 13a of 15 U.S.C. (§ 1 and § 3 of the Robinson-Patman Act) but the opening paragraph of the opinion made reference to both of them as apparently assuming that both might be involved in the situation before it. § 1 of the Act is of course a reenactment of § 2 of the Clayton Act with substantive amendments made thereto. As to § 3, the Court has since held in Nashville Milk Co. v. Carnation Co., 355 U.S. 373, 78 S.Ct. 352, 2 L.Ed.2d 340 (1958) [5–4 decision] that no private damage-right exists for the violations created by that section. It recognized, however, the right of such recovery as to the violations involved under § 1 but with no implication, of course, or occasion to make any, on the form or nature of that right, as involved here and in the expression of *Bruce's*.

It further may be generally noted that even as to the recovery of consequential damages under §§ 1 and 2 of the Sherman Act, this Court has observed: "Evidence that a merchant has been required to pay more for goods which he resells is sufficient to establish, prima facie, that he has been damaged; tested by common experience, such proof is adequate to 'establish with reasonable probability' that profits on resale were less". Lessig v. Tidewater Oil Co., 327 F.2d 459, 471 (9 Cir. 1964).

3. We need not here consider whether there can exist situations of extraordinary circumstances warranting a court in refusing to award such damages in a particular case. We are accordingly not concerned with whether the *Russellville* case (see fn. 1, supra) was right in so thinking, or whether Mr. Justice Jackson's phrase in *Bruce's*, "in the absence of extraordinary circumstances", was intended to have such an implication, or whether it was referring to situations of proved, greater consequential-injury, or perhaps to both.

crimination against Thrifty; and that in these circumstances each had violated 15 U.S.C. § 13(f) of the Robinson-Patman Act and was liable to Thrifty for damages on this basis. The court found, however, that none of these defendants could be said on the evidence to have had knowledge that he was being favored with a discrimination as against Thrifty, and it accordingly dismissed the claims. This dismissal has been made the subject of a cross-appeal by Thrifty, which will be referred to later.

As noted at the start, Fowler was a manufacturer of electric water heaters. Thrifty and defendants Keller, Rosen and Mesher were all engaged in the jobbing or wholesaling of plumbing supplies, mostly to builders and subcontractors in apartment and residential construction or development projects. Electric water heaters, as the court stated in its findings, were used as a "leader" for obtaining plumbing supply contracts or making other plumbing supply sales. In the highly competitive situation thus involved, the court went on to declare that it was reasonable to "assume" that Fowler's discrimination in prices and allowances "did have the effect of substantially lessening or injuring competition".

■ Fowler challenges the finding in which this statement occurs upon the ground that a judicial finding cannot rest on an assumption, but must have a probative basis. We need not, however, concern ourselves with this contention, for the statement or assumption was in any event immaterial in the situation. As implied by our holding above, the right of a court to grant a general damage award under the Robinson-Patman Act for the amount of an illegal difference in prices and allowances does not depend upon its having been evidentially established, and the court's being able to find on the basis thereof, that a lessening of competition has in fact occurred, and that the extent of the injury occasioned thereby in the particular situation corresponds to the amount of the discrimination. The Act permits recovery of the amount of a discrimination in

prices and allowances without the necessity of any such specific proof or finding as a basis therefor.

■ This holding further leaves without any substance Fowler's principal other contentions. Thus, upon this basis, there can be no room to argue that the question of injury to Thrifty had to be considered in relation to the fact that electric water heaters of other manufacturers were available on the local market; that all electric water heaters were in their respective classes standardized as to design, construction and quality and were of equal "leader" use; that such other heaters could have been obtained by Thrifty at prices which would fully have enabled it to meet Keller's, Rosen's and Mesher's or other competition; and that it therefore should be held that Thrifty could not claim any competitive injury to itself from Fowler's alleged discriminations. (We have stated Fowler's argument in its naked effect without concerning ourselves with whether the factual premises thereof were all conclusively established.)

Whatever may be the legal significance in some situations under the Sherman Act of the availability of a similar product on equal terms and conditions, the circumstance of such availability can have no place as a defense under the Robinson-Patman Act to a discrimination by a seller against a purchaser in prices and allowances on goods which he has sold to him. To hold otherwise would be to make a farce of the Act and to put a seller into the ludicrous position of being able to say, "If I have engaged in illegal discrimination, what of it? You didn't have to buy your goods from me".

■ Equally without validity under the Act is Fowler's contention that the question of injury was further required to be considered in relation to such other concessions or adjustments as had occurred between it and Thrifty through the course of the period involved, and that the fact of damage had to be resolved on the basis of whether, in its over-all dealings with Fowler, Thrifty

had come out in as good or better a position as Keller, Rosen and Mesher.

Dissatisfactions, grievances and complaints are, we should suppose, incidents of commercial dealings in general and the practical disposition of them a necessary part of business operation. Many of the actions ordinarily taken by a seller on these aspects are no doubt good-faith endeavors by it to preserve its own competitive position. (Incidentally, one can hardly escape gathering from the record that Thrifty was not unaware of how to make complaints or demands and to press for satisfaction of them). But legally, whatever concessions or adjustments may thus have been made in favor of Thrifty would be irrelevant here, except as they could be shown to have constituted settlements of the legal discriminations involved. The trial court did not err in its appraisal of these concessions or adjustments as not having been in their context of that nature and significance as to the discriminations involved.

We shall not prolong this opinion by engaging in a discussion of Fowler's other contentions, except one made on the question of res judicata, which will be considered immediately hereafter. As to the others, we deem it sufficient to say that we have carefully read the voluminous record and that as to all the material aspects of the situation we are satisfied that the trial court's findings and conclusions rest upon adequate probative basis and upon proper legal interpretation of the various written instruments involved in relation thereto.

### III.

Fowler had pleaded res judicata as one of its defenses to Thrifty's attempt to recover any damages from it. Its contention was predicated on the dismissal made by a Washington state court of claims which Thrifty had previously asserted against Fowler, Keller, Rosen and Mesher under provisions of the Washington Unfair Practices Act, R.C. W. 19.86.020, 19.86.030, 19.86.040 and 19.90.040. That Act contained prohibitions in respect to local trade or commerce similar to some of those made by the Sherman Act and Clayton Act as to trade or commerce in general.

The trial court held that the state court's dismissal of the claims under the Washington statute was res judicata as to the claims which Thrifty was attempting to assert here under the Sherman Act and the Clayton Act upon a similar basis, and it was upon this ground that it dismissed those claims, as referred to previously. As to the claim made under the Robinson-Patman Act, however, it held that since the Washington statute did not provide any right of action or recovery for a discrimination in prices and allowances, the state court dismissal could not be res judicata of Thrifty's right to sue and recover under the Robinson-Patman Act for such discriminations.

Fowler does not contend that any right of action or basis of recovery existed under the Washington statute for the discriminations involved. It argues that Thrifty could not split its cause of action, from which it would appear that it regards all injuries which may occur during any period from violations of the antitrust laws (Sherman, Clayton and Robinson-Patman) as giving rise to only a single cause of action or recovery right.

It has cited no decision that so holds, and we know of none.[4] Of course, one may not recover damages twice for any injury occasioned to him. And conceivably, one could recover such damages on a cause of action under the Sherman Act as would legally compensate him for all antitrust injuries sustained by him— as, for example, where there had been

---

4. It might be that all antitrust claims existing under the Sherman Act, the Clayton Act and the Robinson-Patman Act in favor of a party against another ought desirably to have to be joined, but Rule 18(a), Fed.R.Civ.P. does not so require. And the matter of joinder of claims is of course purely a procedural question and not a substantive one as is that of splitting a cause of action.

a complete destruction of his business. In such a situation, there would doubtless be an estoppel or preclusion as to any attempt by him thereafter to recover for the discriminations in prices and allowances which had been made against him.

 But no such aspect is, of course, here involved. And as to Thrifty's suit for the discriminations in prices and allowances made against· it,· it seems wholly clear to us that the trial court was right in regarding the dismissal made by the state court of Thrifty's claims under the Washington Unfair Practices Act as not being able legally to constitute an adjudication of its right to recover for the discrimination in prices and allowances, or to involve any splitting of a cause of action.

### IV.

Thrifty has taken a cross-appeal, as previously mentioned, from the trial court's finding that defendants Keller, Rosen and Mesher did not have knowledge, in the favored prices and allowances received by them, that Fowler was discriminating against Thrifty, and that they were accordingly entitled to dismissal of Thrifty's claim against each of them for damages under 15 U.S.C. § 13(f). The cross-appeal also challenges other findings made against Thrifty on some aspects and elements which Thrifty contended entitled it to a greater amount of discrimination recovery against Fowler.

As to all of these, we deem it sufficient in the situation to say, as we did above in respect to some of Fowler's contentions, that we have carefully read the record and are satisfied that the findings and conclusions complained of all rest upon adequate basis and proper interpretation of such written instruments as were involved in relation thereto. We cannot be asked to engage in a retrial or a reappraising judgment on the elements of fact, inference and evaluation involved in a case merely because some arguable challenge can be made to them.[5]

### V.

An attorney's fee allowance of $9,000 was made by the trial court, the parties having stipulated to the reasonableness of this amount, if the discriminations found by the court could properly be held to have existed and to be recoverable. An additional attorney's fee in the sum of $2,500 will be allowed here.

### VI.

The judgment is affirmed, with the allowance of an additional attorney's fee in the sum of $2,500.

---

5. Professor Charles Wright, one of the leading scholars of the federal judicial system, has commented on what he denominates as "[t]he esoteric theories by which appellate courts pretend that questions of fact have somehow become questions of law, and thus can be decided anew by the appellate judges". Wright, The Federal Courts—A Century after Appomatox, 52 A.B.A.J. 742, 748 (1966).