**HASBROUCK, et al., d/b/a Rick's Texaco, Plaintiffs,**

**v.**

**TEXACO, INC., a foreign corporation, Defendant.**

**No. C–76–027–JLQ.**

United States District Court, E.D. Washington.

March 21, 1986.

Robert H. Whaley and Lucinda S. Whaley, Spokane, Wash., John S. Ebel, Seattle, Wash., for plaintiffs.

Wm. Fremming Neilsen, Mark Litvack & Randall Robinson, Spokane, Wash., In-house counsel for Texaco, Inc.

## MEMORANDUM OPINION AND ORDER RE: PLAINTIFFS' MOTION FOR ATTORNEY FEES

QUACKENBUSH, District Judge.

BEFORE THE COURT is the Petition for Judgment of Attorney Fees and Costs Pursuant to 15 U.S.C. § 15 filed by plaintiffs on August 28, 1985. Testimony thereon and final argument were heard by the court on January 3, 1986. Plaintiffs appeared by attorneys Robert H. Whaley and Lucinda S. Whaley of Winston & Cashatt and John S. Ebel of Culp, Dwyer, Guterson & Grader. Texaco, Inc., appeared by Mark Litvack and Randall Robinson, in-house counsel, and Wm. Fremming Nielsen of Paine, Hamblin, Coffin & Brooke.

## FACTUAL BACKGROUND

This now ten year old case was filed on January 30, 1976. Twelve plaintiffs, the operators of Texaco service stations, alleged that Texaco had discriminated against them in the sale of gasoline products in violation of Section 2(a) of the Clayton Act, as amended by the Robinson-Patman Act, 15 U.S.C. § 13(a). Thereafter, and for a period of some three and one-half years, extensive and voluminous discovery took place along with the filing and hearing of commensurate pre-trial motions.

The first trial of this matter took place from August 2, 1979 until August 31, 1979 before Judge Marion J. Callister of the District of Idaho, sitting by designation due to the illness of Judge Marshall A. Neill.[1] At that trial Judge Callister precluded Texaco from interposing its "cost justification" defense due to the failure of Texaco to timely produce supporting discovery materials. Judge Callister instructed the jury on proof of damages based upon *Fowler Mfg. Co. v. Gorlick*, 415 F.2d 1248 (9th Cir.1969). *Fowler* adopted the automatic damages rule which allowed, but did not require, the jury to infer minimum damages based upon the illegal price differential times the quantity of the retailer's purchases.

The jury returned a verdict which when trebled totaled $2,551,450.92. Thereafter, on March 26, 1980, Judge Callister granted the defendant's Motion for Judgment N.O.V. on the basis, *inter alia*, that plaintiffs had failed to prove the fact of damage other than under the *Fowler* automatic damage rule. Plaintiffs timely filed a no-

---

1. The court files reflect that Texaco was represented in that trial and on appeal by four separate law firms from New York, Los Angeles, Denver, and Spokane. Lead trial counsel was Mr. Philip W. Schaefer of the Texaco Company.

tice of appeal from this ruling to the Ninth Circuit Court of Appeals. On October 6, 1980, while the appeal to the Ninth Circuit was pending, the Supreme Court granted certiorari in the case of *J. Truett Payne Co. v. Chrysler Motors Corp.*, 607 F.2d 1133 (5th Cir.1979) a case partially relied upon by Judge Callister in his post-trial ruling. Mr. Whaley filed an amici curiae brief in the Supreme Court urging reversal of the Fifth Circuit decision and in support of the automatic damages rule. The Supreme Court decided *J. Truett Payne* on May 18, 1981 and remanded the case to the Fifth Circuit. 451 U.S. 557, 101 S.Ct. 1923, 68 L.Ed.2d 442 (1981).

The instant case was then argued to the Ninth Circuit on September 10, 1981. On December 14, 1981, the Ninth Circuit panel reversed Judge Callister's Order which granted judgment n.o.v. and dismissal in favor of Texaco. *Hasbrouck v. Texaco*, 663 F.2d 930 (1981). The Ninth Circuit held that at the time of trial, *Fowler* was the law of this circuit and Judge Callister incorrectly determined otherwise. The Circuit remanded the matter for a new trial both on liability and damages. Texaco petitioned the Ninth Circuit for rehearing or rehearing *en banc* and upon denial petitioned the Supreme Court for certiorari, which petition was opposed by plaintiffs. That petition was denied on October 4, 1982.

Upon reversal of this case by the Ninth Circuit in 1981 this matter was assigned to the undersigned. Thereafter, Texaco moved this court to allow it to interpose the cost justification defense which Judge Callister had stricken. This court granted that request over the strong objections of plaintiffs. A new Scheduling Order then was entered by this court which allowed the parties some two years to prepare for the second trial and to complete discovery including the additional and substantial discovery related to the cost justification defense. The files reflect the extensive discovery which was conducted and the numerous motions, both substantive and discovery, which were presented by the parties.

At this time, as stated by Mr. Whaley in argument, counsel for the plaintiffs seriously questioned whether counsel could afford to devote the time required to prosecute the action and meet Texaco's defenses, including the newly allowed defense of cost justification, without any ongoing compensation. Counsel also recognized the plaintiffs' questionable ability to provide for the out-of-pocket costs including the hiring of additional experts. Thereafter, counsel for the plaintiffs made every reasonable attempt to settle this action with Texaco to no avail. The record reflects that Texaco rejected plaintiffs' offer to settle the entire case, including attorney fees, for $600,000. Despite the size of the first verdict and this court's favorable recommendation to Texaco of such a settlement, Texaco refused.

To the credit of counsel for the plaintiffs they proceeded with the second wave of discovery, pre-trial preparation, and trial. This consumed over five thousand hours of counsel's time in addition to the six thousand five hundred fifty hours expended by counsel during the period of 1975 through 1979. The plaintiffs were unable to pay for the costs involved in the preparation for and trial of this case the second time. Counsel for plaintiffs expended the sum of $124,245.25 of their own funds for these purposes, which, as of January 16, 1986, had not been reimbursed by plaintiffs (Ct. Rec. 877). There is no evidence to support a finding that plaintiffs will ever be able to reimburse these costs if they are ultimately unsuccessful in this action. The fee agreement between the plaintiffs and their counsel was amended prior to the second trial to provide that counsel would receive the fee set by the court or a specified percent of the recovery, whichever might be larger.

The second trial of this matter commenced on June 4, 1985. Robert H. Whaley, Lucinda S. Whaley and John Ebel again represented the plaintiffs. Randall Robinson and Mark Litvack, Texaco in-house counsel, represented Texaco along with Wm. Fremming Nielsen of Paine, Hamblin, Coffin & Brooke. Ira S. Sacks of

Kaye, Scholer, Fierman, Hays & Handler also appeared, briefed, and argued the principal legal issues. On June 25, 1985, the jury returned a verdict in favor of the plaintiffs which, when trebled, totaled $1,349,700. Numerous post-trial motions were then filed and upon denial, the court scheduled hearing on plaintiffs' request for attorney fees and costs of suit. At Texaco's request the court allowed discovery of the records of the plaintiffs' attorneys, but also allowed reciprocal discovery of Texaco's expenses. The court cautioned counsel, however, that the issue of attorney fees should not, in the words of Justice Powell, "become a second trial." *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983).

To the credit of all counsel, that admonition was apparently heeded. After Texaco completed its inspection of the records of plaintiffs' counsel, the parties entered into a stipulation concerning the request for attorney fees. (Ct.Rec. 832). That stipulation provides that Texaco agreed to the following:

1. Counsel for plaintiffs actually spent the time claimed and expended the costs as set forth in the affidavit of Robert H. Whaley (Ct.Rec. 773).

2. The attorneys' time spent and costs incurred by plaintiffs' counsel were reasonably and necessarily incurred in the representation of plaintiffs in this action.

3. The hourly rates set forth in Mr. Whaley's affidavit were reasonable at the time they were incurred.

4. Texaco reserved the right to challenge the following aspects of plaintiffs' fee petition:

(a) The application of a multiplier.

(b) Texaco's contention that the fee award should be limited to that which would arise under the Contingent Fee Agreement.

(c) That the fee to be awarded should be proportionate to the damage award.

(d) The right to recover fees and costs expended upon uncalled experts.

(e) The right to recover fees and costs of unsuccessful state claims.

(f) The necessity of two trials.

## ANALYSIS

As recognized by counsel, the landmark case in this circuit in setting attorney fees is *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (1975). However, this circuit has also cautioned against the result which might occur from the "wooden" approach suggested by *Kerr*. In *Moore v. Jos. H. Matthews & Co.*, 682 F.2d 830 (1982) at 840, the court suggested a "blended" approach where the hours spent is equated with the "time and labor required" of *Kerr*, with the result applied to the hourly rate determined by consideration of the other *Kerr* factors. The final determination is whether to increase or decrease the award based upon quality or contingency considerations.

In making this decision I have kept in mind the twelve *Kerr* factors. The court's decision has been made less burdensome by the stipulation entered into by counsel. The matters to be resolved, having the *Kerr* factors in mind, are those left open in the stipulation.

In the stipulation Texaco reserved the right to challenge the "necessity of two trials." (Ct.Rec. 832 at 4). Texaco does not pursue that matter in its brief (Ct.Rec. 876) filed after the stipulation. Even had that challenge been made, the court concludes that two trials were in fact necessary. The second trial was in fact ordered by the Ninth Circuit panel in the first appeal. Plaintiffs' other option was to capitulate and dismiss the action. The jury verdict confirmed that plaintiffs' decision to pursue the second trial was appropriate.

Texaco's second challenge to the number of hours expended relates to the dismissal of plaintiffs' pendent state claims under the Washington Unfair Practices Act and the Washington Consumer Protection Act. Judge Callister dismissed these claims in the first trial and plaintiffs did not renew those claims in the second trial. These state claims were based upon the identical

factual occurrences as were the basis for plaintiffs' federal claims. There is no evidence that counsel for plaintiff spent additional time on the state claims, other than the legal research testified to by Ms. Whaley, which research totaled 16.2 hours. The court determines that those hours should be deducted from Ms. Whaley's 1975–1979 total hours. (See Ex. 1 Revised to Ct.Rec. 823). While the stipulation of the parties contained an "estimate" by Texaco that the firm of Winston & Cashatt spent 43.5 hours on these state claims, there is no evidence to support that "estimate." The court therefore concludes that in accordance with the stipulation of the parties, the hours reasonably expended by counsel for plaintiffs total the 11,964.05 hours to August 6, 1985 (see recap to Ct. Rec. 823) plus the additional 503.7 hours expended from August 1985 to December 9, 1985 (Ct.Rec. 873), less the 16.2 hours expended by Ms. Whaley solely on the state claims.

The stipulation of the parties establishes the hourly rates of counsel for plaintiff as being reasonable. It appears that Texaco contests plaintiffs' claim that the current rates of their counsel should be applied to all of the time expended, although such a contention is not specifically reserved by Texaco in the stipulation or addressed in Texaco's brief (Ct.Rec. 876). In this regard the primary issue is whether the fee to be awarded for the period 1975-October 1979 should be based upon the historical hourly rate then in existence or should be based upon the hourly rates for the 1979–1985 period. It is clear that the fee requested for the 1979–1985 period is based upon the hourly rates then in effect, the reasonableness of which is not challenged by Texaco.

■ The court concludes that it is appropriate to compute the "lodestar" based upon the hourly rates in existence during the 1979–1985 period. Such a computation takes into consideration the long delay in

plaintiffs' counsel receiving payment for services rendered six to ten years ago. For example, assuming a conservative interest rate of ten percent per year and further assuming that payment for the services rendered in 1975–1979 became due in 1979, six and one-half years have expired which computes to interest of sixty-five percent (65%).[2] Use of the '79-'85 rates appropriately compensates for this delay in receiving payment and inflation. "Failing to correct for inflation and delay between the date of rendering services and the date of payment would give antitrust defendants and their attorneys a motive to prolong both the antitrust case itself and the fee issue." *Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.*, 776 F.2d 646, 663 (7th Cir. 1985). While the *Sealy* case is not a Ninth Circuit case, it is noted that The Honorable Eugene A. Wright of the Ninth Circuit was a member of the *Sealy* panel. See also the *Third Circuit Task Force Report On Court Awarded Attorney Fees*, 108 F.R.D. 237, 262 (1985) which recommends either the use of a multiplier, "current rates," or an appropriate interest rate to compensate for the delay in receiving payment for attorney services rendered.

Based upon the foregoing the court computes the "lodestar" fee in the amount of $1,284,896 as follows:

| | | |
|---|---|---:|
| 1. | Services rendered 11/75—8/6/85 (Recap to Ct.Rec. 823) | $ 1,238,948 |
| 2. | Services rendered 8/6/85—12/6/85 (Ex. III to Ct.Rec. 873)[3] | 47,406 |
| | TOTAL | $ 1,286,345 |
| 3. | Less state law claims (16.2 hrs. × $90) | 1,456 |
| | Total "lodestar" fees | $ 1,284,896 |

Texaco contends the attorney fees to be awarded in this case should be limited to the amount payable under the contingent fee agreement. In 1975 plaintiffs and their attorneys entered into a contingent fee

---

**2.** The difference between the total "historical" fees of $442,946.75 and the "current" 1979–1985 rates of $672,580 is 50%.

**3.** This item represents the time which the court finds counsel for the plaintiffs reasonably expended on post-trial matters, including the request for attorney fees.

agreement which provided a contingent fee of one-third of the total recovery including attorney fees awarded by the court. In this case such an agreement would result in a fee of $878,199 representing one-third of the trebled jury award of $1,349,700 plus $1,284,896, being the lodestar. However, prior to the second trial the plaintiffs and their attorneys amended their agreement to provide that the attorneys had the option of receiving the reasonable attorney fee as set by the court. The court agrees that the fee agreement between the parties is one of the factors to be considered under *Kerr*, *supra*, however, the amount of fees is not limited to nor is the court obligated to award the fee computed under the fee agreement. *Hamner v. Rios*, 769 F.2d 1404 (9th Cir.1985) and cases cited therein. See also *Cooper v. Singer*, 719 F.2d 1496, 1503 (10th Cir.1983).

■ As found above, the plaintiffs and their attorneys, prior to embarking on the second phase of this case, analyzed the additional work and expense which would then be required of plaintiffs' counsel, since the second trial would require proof of competitive injury and of actual damages flowing from that injury and in addition would require counsel for the plaintiffs to meet the additional defense of "cost justification" which was allowed by the court. Prior to the second trial in May of 1985, plaintiffs and their counsel then entered into a revised fee agreement (Ct.Rec. 798, p.2) which provided that counsel had the option of receiving the reasonable attorney fees as set by the court or one-third of the total recovery. Texaco, in effect, now argues that this agreement in fact limits the attorney fees to one-third of the recovery. Such argument ignores the provision which allows the attorney to be paid the fees to be set by this court. *Hamner v. Rios, supra,* directs the trial court to consider the contingent fee agreement in setting a reasonable attorney fee, and this court has done so. However, this contingent fee agreement does not limit the attorney fees to one-third of the recovery. The limiting of attorney fees in this case to one-third of the total recovery would not compensate plaintiffs' attorneys in a reasonable amount. In fact, such a sum would be unreasonable.

■ Texaco next contends that the fee request of plaintiffs is disproportionate to the result obtained. The court agrees that under *Kerr*, *supra*, the court should, and has, considered the amount involved and the result obtained. It would be inappropriate and improper for the court to adopt a blanket rule that in all cases, the amount of a reasonable attorney fee cannot exceed the monetary recovery or that the attorney fees cannot exceed a fixed percentage of that recovery. Indeed, Texaco cites no authority to support such a proposition. While the test is one of "reasonableness," the extent of the plaintiffs' success is a crucial factor in determining the proper amount of an award of attorney fees. *Hensley v. Eckerhart, supra,* 461 U.S. at 440, 103 S.Ct. at 1943.

This ten-year-old case has now been through two lengthy jury trials, reviewed once by the Ninth Circuit Court of Appeals, whose decision Texaco then sought to have reviewed by the Supreme Court. In each instance, the plaintiffs have been successful. In the last trial, the jury awarded the plaintiffs damages in the upper range of the evidence of damages caused by their competitive injury. In fact, Texaco now contends that the jury award exceeded the damages established by plaintiffs' damage evidence. While this court has concluded otherwise, that contention supports this court's finding that the plaintiffs, in both jury trials, have fully succeeded. In addition, had not Texaco withdrawn from the Spokane market, the plaintiffs would have been entitled to injunctive relief.

Texaco's "disproportionality" argument might seem appealing to one who merely looks at the total recovery, even though it be substantial, and then compares it to the amount of fees awarded without any analysis of the *Kerr* factors, or without a calm, thoughtful and dispassionate review of the entire nature and extent of the litigation. One can only hope that the time does not

come where it becomes necessary for counsel to periodically video-tape "A Day In The Life Of Plaintiff's Attorneys In The Doe Case" to refresh the recollection of the trial court or a reviewing court as to what went on five, or in this case, ten years ago. Even though this court has been assigned this case for five of its ten year life, the danger exists that this court, having completed its role in the matter, and having its attention directed to its numerous other cases, will be unable to accurately recall the history of the case and the time expended, without ongoing compensation, by counsel for the plaintiffs. Fortunately, in this matter, counsel for the plaintiffs have maintained accurate commensurate time records and Texaco has stipulated to the reasonableness of hours expended and the hourly rates at the time of rendering of those services. In fact, Texaco does not dispute that it expended at least an equal number of hours in the defense of the case. Based upon the history of this action and the success obtained, the court concludes that the attorney fees awarded are not disproportionate to the results obtained.

■ The final issue, and that which appeared to receive the most attention of both sides, is plaintiffs' request for enhancement of the fee determined to be reasonable, or application of a so-called multiplier due to the contingent nature of fee payment and the risk that counsel for the plaintiffs would receive no payment for their services had plaintiffs been unsuccessful in this action. Texaco urges that *Hensley v. Eckerhart, supra* and *Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) have either precluded, or at least foreshadowed the preclusion of enhancement of an attorney's fee due to the contingent nature of the fee agreement. While this court initially observed that such might be the case, a thorough review and analysis of these two cases, convinced this court that observation was erroneous.

*Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), did not directly address the issue of enhancement of the award since the district court did not enhance the amount of fees which it awarded based upon hours reasonably expended times the reasonable hourly rate. Likewise, the enhancement issue was not directly addressed by the Supreme Court. The Supreme Court only decided the issue of the award of attorney fees on distinct as opposed to related issues, holding that "where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable attorney fee." *Hensley,* at 440, 103 S.Ct. at 1943. The Court further held that where a lawsuit contains related claims and the plaintiff obtains "substantial" relief, the plaintiff should not have his fee reduced simply because the trial court did not hold for the plaintiff on each distinct theory advanced. The Court remanded the case for reconsideration under those holdings. The important language of *Hensley,* as it applies to the case *sub judice,* is found at pages 434 and 435, 103 S.Ct. at pages 1939 and 1940 where the Court discusses the fact that in some cases, where there has been exceptional success, an enhanced fee award may be justified. The Court did not discuss enhancement due to the contingency nature of the case.

*Blum v. Stenson, supra* did involve the award by the district court of a fifty percent "bonus." However, in that case the trial court did not base its enhancement of the fee award on the risk of the litigation or the certainty that no fee would be paid if the plaintiffs were unsuccessful. As pointed out by Justice Powell at page 901, 104 S.Ct. at page 1550 of *Blum:*

"[N]owhere in the affidavits submitted in support of respondent's fee request, nor in her brief to the district court, did respondent identify any risks associated with the litigation or claim that the risk of nonpayment required an upward adjustment to provide a reasonable fee. *On this record, therefore, any upward*

*adjustment for the contingent nature of the litigation was unjustified."* (Emphasis supplied).

Of further interest to this court is the fact that counsel for the plaintiffs in *Blum* were from the Legal Aid Society of New York, and while not directly discussed, it would appear that such counsel were compensated by salary on an ongoing basis during the term of the litigation and that the result obtained would have no effect thereon. Counsel for plaintiffs had not even requested an upward adjustment of the "lodestar," due to any contingency of non-payment, but only requested a bonus based upon the complexity of the case. As pointed out by the Court, such a factor is considered in determining the reasonable hours expended and the reasonable hourly rate. This court also notes that *Blum* was decided on cross-motions for summary judgment after service of only one set of interrogatories. Counsel received a fee of $80,000 for this work before the district court's award of the "bonus". That factual circumstance is in stark contrast to this case where counsel for plaintiffs have received no compensation from this case during its ten-year history and in fact the court finds that the income of Mr. Whaley and his firm was substantially reduced due to the large amount of time he has expended on this case. See Mr. Whaley's affidavit at Ct.Rec. 773.[4] For the foregoing reasons, this court concludes that *Blum* does not preclude the enhancement of attorney fees award in an appropriate case, due to the risk of the attorneys never receiving *any* compensation for their efforts.

This court concludes that in an appropriate case an upward adjustment should be included in setting the final amount of reasonable attorney fees. This conclusion is supported by the report of the Third Circuit Task Force On Court Awarded Attorney Fees, 108 F.R.D. 237 (1985). Having in mind the recent decisions of the Supreme Court in *Hensley* and *Blum,* this Task Force concluded at page 38 of its Report

that "... the contingency factor, defined simply as the risk of winning or losing, should be considered in all cases. Plaintiffs' attorneys always face the prospect of receiving no compensation in statutory fee cases. Even modest risks in cases in which liability is reasonably certain to be established should be recognized in the fee setting process."

This court has fully reviewed the history of this case and as indicated has been the assigned judge for the past five years including the handling of all post-remand matters, pre-trial, the second four-week trial, and subsequent motions. The defense of this factually and legally complex case has, to say the least, been thorough and diligent. Texaco has been represented throughout this case by highly skilled and competent counsel, including at least one firm and its counsel who specialize in antitrust and Robinson-Patman cases. At the time counsel for plaintiffs undertook the representation of the plaintiffs, they undoubtedly knew that Texaco would vigorously defend this action, not only by reason of the monetary claims but also by reason of the effect on Texaco's marketing practices in at least the Spokane area.

After an initial three and one-half years of pre-trial discovery and motions, the first four-week trial resulted in a jury verdict, when trebled, of $2,551,450.92. The matter did not end at that stage. Judge Callister's entry of judgment n.o.v. in favor of Texaco was reversed by the Ninth Circuit and the action was remanded for a complete new trial on both liability and damages. Upon remand, Texaco moved this court to allow it to reintroduce the cost justification defense which Judge Callister had precluded. This court granted Texaco's motion, much to the dismay, I am sure, of plaintiffs and their attorneys, since not only did this issue raise another serious defense to the claims, but it also required additional extensive and expensive discovery by the plaintiffs and their attorneys.

---

**4.** The court further finds as discussed *infra,* that counsel for the plaintiffs have advanced the sum of $124,245.25 from their own funds, which plaintiffs have been unable to reimburse.

Contrary to the complete failure in the record in *Blum v. Stenson, supra,* of a factual basis for enhancement of the fee award based upon risks associated with the litigation or a risk of non-payment or recovery of fees, the record in this case is complete as to such facts. As previously stated, Texaco diligently and vigorously defended this action. Besides the issue of "competitive injury," this case was replete with other difficult issues including the FEA regulations, meeting competition defense, cost justification, and interstate commerce. These issues alone made this case a difficult one where obvious risks of the defense prevailing existed.

Secondly, counsel for the plaintiffs in this case have presented ample testimony and evidence as to the risk of nonpayment in a contingent fee case such as this through the testimony of two experienced and respected trial attorneys. The first attorney, Mr. Thomas J. Greenan, has specialized in anti-trust litigation since the mid-1960's representing both plaintiffs and defendants in major trials (Ct.Rec. 785 and 869). Mr. Greenan is a past Chairman of the Anti-trust Section of the Washington State Bar Association, a past President of the Federal Bar Association of the Western District of Washington, and a Fellow of the American College of Trial Lawyers. Mr. Greenan testified that in view of the complexity of the litigation, the difficulty of the legal issues, and the uncertainty of payment, a reasonable multiplier of 1.5 to 2 times the current hourly rate should be applied. The court was particularly impressed with Mr. Greenan's testimony and statements that competent counsel would not undertake representation of plaintiffs in cases such as this if they were *only* paid their regular hourly rates, *but only* if the plaintiffs were successful in the litigation.

Mr. Eugene Annis also filed an affidavit and testified as to the appropriateness of the application of a reasonable multiplier. Mr. Annis is an experienced, competent, and able trial attorney who has represented both plaintiffs and defendants in various types of litigation for the past twenty-five years. Mr. Annis' review of this matter

resulted in a conclusion that the application of a multiplier of two is warranted (Ct.Rec. 811). Mr. Annis testified that such a multiplier is particularly appropriate in view of the uncertainty of payment of any fee. The testimony of Mr. Annis and Mr. Greenan was not controverted by Texaco and the court finds that their testimony is well-founded.

In the initial stages of this attorney fees litigation, the court questioned whether a multiplier could legally or factually be applied. This observation was made prior to the presentation of any evidence on the attorney fee issue, prior to the submission of legal memoranda, and prior to the thorough review of this matter which this court has now completed. The court has now concluded that in view of the uncertainty of counsel for plaintiffs ever receiving payment for their services rendered in the last ten years and the further uncertainty of counsel being repaid the balance of $124,-245.25 which they have necessarily advanced for costs of this action, the fee should be enhanced. While this conclusion is contrary to the court's original impression, I am reminded and somewhat guided by the statement of Justice Frankfurter in *Henslee v. Union Planters Bank,* 335 U.S. 595, 600, 69 S.Ct. 290, 292–93, 93 L.Ed. 259 (1949) that "Wisdom too often never comes, and so one ought not to reject it merely because it comes late."

Throughout the court's analyses and study of this matter I have kept in mind the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974) as adopted by the Ninth Circuit in *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67 (9th Cir.1975). The pertinent findings and conclusions of the court have been set forth above, however, a structured review of those factors as applied to this case results in the following findings and conclusions:

1. *The Time and Labor Involved.*

Texaco has stipulated to the reasonableness of the time expended and the reason-

ableness of the "historical" hourly rates. For the reasons set forth earlier, the court finds that current hourly rates should be applied.

### 2. *The Novelty and Difficulty of the Questions.*

The court has previously discussed these factors and the file reflects the extensive factual and legal issues raised in this litigation.

### 3. *The Skill Requisite To Perform The Legal Services Property.*

As found above, Texaco defended this action through most experienced and capable counsel, including counsel specializing in the specific anti-trust issues herein involved. The skill demonstrated by counsel for plaintiffs was equally high and that skill was required to successfully prosecute this action.

### 4. *The Preclusion Of Employment By the Attorneys Due To Acceptance Of This Case.*

There is no evidence that counsel for plaintiffs have been precluded solely by reason of their representation of the plaintiffs from accepting other clients, other than as previously discussed, by the vast amount of time which of necessity was devoted to this case.

### 5. *The Customary Fee.*

Texaco has stipulated to the reasonableness of the "historical" hourly rates and the court has applied the current rates. The cases cited by plaintiffs and the affidavit of Mr. Greenan establish that the utilization of a multiplier in an appropriate case is customary.

### 6. *Whether The Fee Is Fixed Or Contingent.*

The court has previously discussed the contingent or uncertain aspect of counsel for plaintiffs being paid for their ten year efforts and this factor is the reason why the court concludes that enhancement of the basic hourly fee total is appropriate.

### 7. *Time Limitations Imposed By The Court Or The Circumstances.*

The court has previously discussed and Texaco has stipulated to the necessity of the time expended by counsel for plaintiffs. The over 11,000 hours expended by those attorneys in the past ten years substantially have reduced the attorneys' income and other opportunities.

### 8. *The Amount Involved and The Result Obtained.*

The court has already discussed this factor and Texaco's "disproportionality" argument.

### 9. *The Experience, Reputation and Ability of the Attorneys.*

This element is primarily utilized in establishing the reasonable hourly rate. Counsel for the plaintiffs are experienced, enjoy excellent reputations, and their conduct of this litigation evidenced their excellent ability. Mr. Whaley and Mr. Ebel have been lead counsel in this litigation from its commencement. They are knowledgeable and experienced attorneys in anti-trust and other complex litigation. Mr. Whaley's educational and legal background is set forth in his affidavit dated August 26, 1985 (Ct. Rec. 773).

Mr. Whaley has previously served as a trial attorney with the Department of Justice (1969–1971) and as an Assistant United States Attorney (1971–1972). He has been in private practice since 1972. His trial ability and demeanor is of the highest quality as was demonstrated in this case. Mr. Ebel has been a member of the law firm of Culp, Dwyer, Guterson & Grader since 1972 and has extensive anti-trust experience. Mr. Ebel argued most of the difficult legal issues presented in this action and his expertise in anti-trust matters was evidenced throughout this court's handling of this matter.

While Lucinda Whaley originally worked on this matter as a law clerk, she fully participated as an attorney in both trials

upon her admission to practice in 1977. Ms. Whaley is already an accomplished trial attorney and her diligence and perseverance in the preparation of the factual aspects of this case was apparent.

### 10. *The Undesirability of the Case.*

This factor must be analyzed in connection with the contingent aspect of plaintiffs' counsel receiving payment. If in fact counsel would be limited to payment based only upon their *hourly* rate, but only if they were successful, this case would be classified as undesirable, particularly in view of the vigorous defense presented by Texaco, apparently without any monetary limitations thereon.

### 11. *The Nature and Length of the Professional Relationship With the Clients*

There is no evidence that prior to the initiation of this action, counsel had any ongoing professional relationship with the plaintiffs.

### 12. *Awards In Similar Cases.*

Mr. Greenan's affidavit and testimony has given the court evidence to consider in applying this element as have the cases cited by counsel for the plaintiffs. The cases cited by Texaco are not apposite.

█ In view of the foregoing, the court concludes that the lodestar fee shall be enhanced by one-third. This enhancement would be appropriate in view of the complexity and length of this case, however, that factor has been taken into account in the hours reasonably expended and hourly rate equation. The enhancement is awarded in this case solely because of the uncertainty of the recovery of any fee or compensation in this action. The enhancement is not based upon delay in receiving payment, since that delay has been compensated for by the utilization of current rather than historical hourly rates. While there may be those who at first blush would be concerned about the award of attorney fees of $1,713,191 in a case where the substantive recovery is $1,349,700 the complexity,

both factual and legal, the strident defense posture of Texaco, and the uncertainty of recovery of any attorney fees make such an award appropriate in this case. The necessity of plaintiffs' counsel advancing the sum of $124,245.25 from their own funds without reimbursement is also an element in this consideration. This conclusion has only been reached after the court has reflected upon all of this case's ten-year history. These attorney fees are also appropriate so that counsel in general will not be deterred from undertaking the representation of deserving clients nor by the interposition of so-called "no-holds or expense barred" defenses. Such an award likewise is necessary to allow the prosecution of appropriate actions such as this by "private attorney generals." *Twin City Sportservice, Inc. v. Charles O. Finley & Company, Inc.*, 676 F.2d 1291 (9th Cir. 1982).

### COSTS

Texaco reserved its right to challenge two aspects of plaintiffs' costs. While Texaco did not address in their brief the necessity for or charges by plaintiffs' experts, the court specifically finds that the retention by plaintiffs of the experts listed in Exhibit II of Mr. Whaley's affidavit (Ct. Rec. 773), was necessary due to the defenses interposed by Texaco. The court further finds the fees of these experts are reasonable. The court notes that plaintiffs seek the allowance of fees for its experts only during the period 1982–1985.

█ The final challenge by Texaco to plaintiffs' request for costs of $182,895.14 is the expense of document workers. While the court concludes that the expense of hiring extra document workers for work only on a specific case may be properly allowed, and while some of plaintiffs' "document workers" may have worked only on this case, the court is not satisfied that plaintiffs have carried their burden in this regard. The ongoing costs of secretarial employees should ordinarily be paid from the attorneys' hourly fees. The court

therefore disallows the claims of plaintiffs of $9,784 (Ct.Rec. 872, p.16) for "document workers." Plaintiff is entitled to recovery of the remainder of its costs totaling $173,111.

The Clerk of this court shall enter judgment in favor of the plaintiffs for attorney fees in the amount of $1,713,191 plus the sum of $173,111 costs. The Clerk shall further file this Order and forward copies to counsel.