AUTOMOTIVE PRODUCTS PLC,
Plaintiff and Counterdefendant,

v.

TILTON ENGINEERING, INC.,
Defendant and Counterplaintiff.

Civ. No. 90–5500 KN (Ex).

United States District Court,
C.D. California.

March 30, 1994.

Richard A. Rossman of Pepper, Hamilton & Scheetz, Detroit, MI, Laurence Z. Shiekman and Helen R. Haynes of Pepper, Hamilton & Scheetz, Philadelphia, PA, Michael K. Brown and Thomas P. Seltz of Crosby, Heafey, Roach & May, Los Angeles, CA, C. Larry O'Rourke and Durk D. Thomas of Finnegan, Henderson, Farrabow, Garrett and Dunner of Washington, DC, for plaintiff and counter-defendant Automotive Products plc.

Edward F. O'Connor, Jan P. Weir, Alan P. Block, and Steven W. Smyrski of Poms, Smith, Lande & Rose, Los Angeles, CA, for defendant and counterplaintiff, Tilton Engineering, Inc.

## ORDER RE: TILTON'S MOTIONS FOR ATTORNEY'S FEES, COSTS, EXPENSES AND INTEREST

KENYON, District Judge.

### I.  *Introduction*

In the partial judgment entered on November 3, 1993, this Court awarded Tilton its reasonable attorney's fees, costs, expenses, and prejudgment and postjudgment interest incurred in connection with its patent, antitrust, and intentional interference with prospective economic advantage claims. However, the Court did not set forth specific dollar amounts for these awards. *See 11/3/93 Judgment.*

Since the signing of the judgment, the Court has awarded Tilton its reasonable costs[1] and has clarified the means of calculating its prejudgment interest on its patent claim.[2]  This leaves only the attorney's fees, expenses,[3] and postjudgment interest for the Court to consider.  But because it cannot accurately calculate Tilton's postjudgment interest herein,[4] the Court will only discuss and award Tilton its reasonable attorney's fees and expenses in this order as set forth below.

### II.  *The Court's September 22, 1993 Order on Fees, Costs, and Expenses*

Tilton first applied for reimbursement of its attorney's fees, costs, and expenses in July 1993.  After a review of its submission and AP's objections thereto, the Court ordered that Tilton submit a more detailed bill of costs, carefully allocating its claimed costs between its patent and antitrust claims; the Court noted, however, that it did not expect Tilton to be perfectly accurate in its accounting.  *See 9/22/93 Order,* at 24 n. 6.  The Court also noted that Tilton could not recover its costs for any time expended purely attributable to the prosecution of its state law claims.  *Id.* at 14.

In October 1993, in response to the Court's order, Tilton submitted over 1,700 pages of detailed invoices and timesheets documenting its bills for the period from October 1990 to September 1993.  In November 1993, Tilton submitted a supplemental bill of costs for September and October 1993.

### III.  *Attorney's Fees*

#### A.  *AP's General Objections*

AP challenges Tilton's attorney's fee submissions, asking this Court to deny or reduce Tilton's fee request for the three reasons discussed below.

##### 1.  *Tilton's Allocation of Fees*

■ First, AP claims that Tilton's bill makes no attempt to segregate out the time spent on the claims for which it is not enti-

---

**1.** In its March 1, 1994 order, the Court awarded Tilton costs in the amount of $119,316.46.  *See 3/1/94 Order on Motions to Re-tax Costs.*

**2.** *See 11/2/93 Order Clarifying Judgment,* at 2.

**3.** *See 11/18/93 Order Re: Motion for Reconsideration on Clayton Costs,* at 3–5 (distinguishing between "costs" and "out-of-pocket" expenses).

**4.** Postjudgment interest is not calculable at this time because it covers the period from the date of entry of judgment "until payment of the money judgment pursuant to 28 U.S.C. § 1961;" in this case, payment of money judgment has been stayed pending appeal.  *See 11/3/93 Judgment; 12/7/93 Stipulation and Order Re: Stay of Execution of Money Judgment Pending Posttrial Motions and Appeal.*

tled to attorney's fees. Specifically, AP claims that several of Tilton's time entries apply to all of Tilton's claims, and not just its patent and antitrust causes of action. Because of this, AP contends that Tilton's fee request should be reduced by 20 percent. *See, e.g., H.J. Inc. v. Flygt Corp.*, 925 F.2d 257, 260–61 (8th Cir.1991) (affirming district court's percentage reduction).

Tilton responds that it complied with the Court's order by specifically indicating which fees were attributable to its patent versus its antitrust claims, and that it did not include in its fee request any entries that were purely attributable to its state law claims.

The Court agrees with Tilton. Tilton has satisfied the Court's September 22, 1993 order by producing extensive and detailed documentation to support its fee request. Moreover, Tilton has adequately divided its time entries between the antitrust and patent claims. Also, Tilton has segregated out the time purely attributable to its state law claims. Accordingly, the Court believes that it would be improper to reduce Tilton's fee award by 20%.

#### 2. *Tilton's Award Reflecting Its Success*

■ Second, AP contends that Tilton's fee request should be reduced by an additional 50% (over the 20% discussed above) because Tilton lost most of its claims and because the jury awarded Tilton only 16.5% of its requested patent damages and less than 40% of its requested antitrust damages.

In response, Tilton claims that because it was the prevailing party in this litigation, it is irrelevant that it did not prevail on its other claims, many of which were alternative theories of recovery.

Again, the Court agrees with Tilton. In its March 1, 1994 order, the Court clearly declared that Tilton was the prevailing party for purposes of awarding Tilton its costs in this case; thus, Tilton is properly the prevailing party for purposes of its fee recovery as well. *See 3/1/94 Order on Motions to Retax Costs*, at 3. Indeed, the Supreme Court's statement regarding fee awards in the patent context in *Hensley v. Eckerhart*, 461 U.S. 424, 435, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983), supports such a holding:

"Where a plaintiff has obtained excellent results, his attorney should normally recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success, an enhanced award may be justified. In these circumstances, the fee award should not be reduced simply because the plaintiff failed to prevail of every contention raised in the lawsuit."

Accordingly, the Court rejects AP's argument and refuses to reduce Tilton's fee as AP requests.

#### 3. *Tilton's Exercise of Billing Judgment*

■ And third, AP asserts that Tilton failed to exercise billing judgment by overstaffing this case, thereby warranting a further 10% reduction (following the already rejected 20% and 50% reduction requests) in Tilton's fees. Specifically, AP claims that Tilton cannot justify its use of 25 attorneys, 4 law clerks, and 8 paralegals on this one case.

Tilton replies that AP overstates the staffing done by Tilton on this case: "Although 25 attorneys billed time to this case, eight of those attorneys, William Poms, Gary Lande, Bernard Gans, Edward O'Connor, Richard Campbell, Jan Weir, Alan Block, and Steven Smyrski billed 97% of all the time on the case. The other 17 attorneys represented only 3% of the hours billed and were attorneys brought in only occasionally for additional support when needed." *Tilton's 10/26/93 Reply Memo*, at 6. Moreover, Tilton clarifies that the four law clerks accounted for only 85.5 hours and that one paralegal, Nanette S. Footlick, accounted for over 70% of the total time expended, with additional paralegal support as needed.

The Court sides with Tilton once more. Tilton adequately explains the reasons behind AP's perception that overstaffing occurred here; indeed, Tilton very reasonably prepared and staffed this case given its length and complexity. The reasonableness of Tilton's staffing is even more apparent when compared to AP's staffing of this case: for example, AP employed *two* law firms as compared to Tilton's *one* here. The Court therefore declines to reduce Tilton's fee request due to any perceived overstaffing by AP.

### 4. Conclusion

For all of the foregoing reasons, the Court rejects AP's general arguments for percentage reductions of Tilton's fee award. The only remaining issue is whether Tilton's fee requests are reasonable given the circumstances. The Court shall address that issue in detail below.

### B. Reasonableness of Tilton's Fee Request

#### 1. The Kerr Factors

■ The Ninth Circuit has specifically stated that a Court must consider the various factors enumerated in *Kerr v. Screen Extras Guild,* 526 F.2d 67, 69–70 (9th Cir.1975), *cert. denied,* 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976) (citing *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974)), in determining whether a party's attorney's fees were reasonably incurred. Accordingly, the Court shall discuss each factor in turn:

#### a. Time and Labor Required

"The trial judge should weigh the hours claimed against his own knowledge, experience, and expertise of the time required to complete similar activities." *Johnson,* 488 F.2d at 717. Upon reviewing the detailed timesheets submitted by Tilton's counsel, the Court finds that the time expended by the attorneys, law clerks, and paralegals on this case compare favorably, in this Court's experience, with the time other professionals would spend in this case. Moreover, as discussed above, the Court believes that Tilton did not overstaff this case, but rather properly exercised sound billing judgment in litigating its claims here.

#### b. Novelty and Difficulty of the Questions Involved

Patent and antitrust law are not new or novel, but often involve factually difficult issues. Such was the case here. In the patent phase of the case, for example, Tilton had to analyze the myriad of patent defenses raised by AP, including obviousness, best mode, indefiniteness, public use, inequitable conduct, and noninfringement. As a direct result, Tilton was required to expend many hours on legal research and in drafting memoranda and briefs on these issues.

#### c. Customary Fee/Experience & Ability of Attorneys

In support of its fee request, Tilton presents detailed profiles on the attorneys at Poms, Smith, Lande & Rose ("PSLR"), a well-respected intellectual property firm in the Los Angeles area. All the PSLR attorneys have substantial patent and engineering backgrounds, with some having experience in antitrust lawsuits. The billing rates presented by PSLR are reasonable and in conformity with the rates charged by other intellectual property law firms in California. *See Report of Economic Survey (1993),* Exh. C to Tilton's 7/12/93 memo.

#### d. Skill Requisite to Perform Legal Service Properly

"The trial judge should closely observe the attorney's work product, his preparation, and general ability before the court." *Johnson,* 488 F.2d at 718. Tilton's counsel, PSLR, demonstrated to this Court time and again that they had the requisite skill and ability to handle this complex lawsuit. Their written work product and performance before this Court have been uniformly good.

#### e. Preclusion of Other Employment by Attorney Due to Acceptance of the Case

Tilton claims that some of its attorneys were precluded from accepting other legal work because of this case. They also claim that 97% of the work was performed by only eight of the twenty-five attorneys at PSLR. This factor does not weigh particularly heavily in Tilton's favor.

#### f. Time Limitations Imposed by Client or Circumstances

The time limitations in this case were substantial. As Tilton correctly points out, much of the billing in this case was driven by AP. AP filed many of its discovery motions *ex parte,* rather than on regular notice. Indeed, AP filed over twenty pretrial motions, including many summary judgment motions on various issues. Moreover, Tilton had to review thousands of relevant documents in preparation for trial. Finally, during trial itself, Tilton often had to submit responsive briefs in very short time periods due to motions made by AP. In sum, Tilton was under considerable time pressure throughout

the lawsuit, much of which was prompted by AP's consistently aggressive posture.

### g. *Amount Involved and Results Obtained*

Tilton's potential liability in this case was extremely large and if it had lost, it could have very well ended up in bankruptcy. The fact that Tilton successfully defended against AP's suit and recovered a multimillion dollar verdict on its patent and antitrust counterclaims is particularly impressive given Tilton's large loss potential in this case.

### h. *Fee Arrangement/Undesirability of the Case*

To a certain extent, this case was undesirable because of Tilton's difficult financial situation. It became readily apparent to PSLR that Tilton would be unable to pay PSLR's fees through the duration of this complex case. As such, Tilton negotiated a fee arrangement with PSLR whereby PSLR would not receive payments for fees and costs prior to the case's termination, although Tilton was ultimately responsible for these fees and costs. Both Tilton and PSLR therefore had every incentive to minimize PSLR's fees and costs wherever possible.

### i. *Nature and Length of Professional Relationship with Client*

PSLR has been Tilton's counsel throughout the duration of this suit, and represents Tilton in other related patent matters.

### j. *Awards in Similar Cases*

Attorney fee awards to prevailing parties in patent and antitrust cases are oftentimes substantial. *See, e.g., Mathis v. Spears,* 857 F.2d 749, 752 (Fed.Cir.1988) (in patent defense case: attorney's fee award: $580,-183.50; expenses award: $83,421.91); *Howes v. Medical Components, Inc.,* 761 F.Supp. 1193, 1202 (E.D.Pa.1990) ($1.95 million in attorney's fees, costs, and expenses awarded in patent case); *Seven Gables Corp. v. Sterling Recreation Organization Co.,* 686 F.Supp. 1418, 1428 (W.D.Wash.1988) ($2.9 million in attorney's fees awarded in antitrust case). Therefore, Tilton's request for over $2.8 million in attorney's fees is not *per se* unreasonable.

The Court will examine the patent and antitrust requests separately below:

### (1) *Patent*

The Court noted in its September 22, 1993 order that Tilton was entitled to its reasonable attorney's fees as the prevailing party in an "exceptional case" under 35 U.S.C. § 285. *See 9/22/93 Order,* at 22–23. The Court noted at that time that the only remaining question was whether Tilton's fee request was reasonable. "Where, as here, a prevailing party 'has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation....'" *Mathis,* 857 F.2d at 755 (citing the Supreme Court in *Hensley,* 461 U.S. at 435, 103 S.Ct. at 1940).

Here, Tilton obtained excellent results in a very factually difficult, hard fought, and legally complicated case. Tilton obtained a jury verdict of $545,000 which was later trebled by this Court based on the jury's finding that AP willfully infringed Tilton's patent. Tilton's success is particularly impressive given that it apparently endured AP's "evasive and dilatory tactics during the prosecution of this case—including its apparent withholding of certain key documents from Tilton during discovery." *9/22/93 Order,* at 23.

### (2) *Antitrust*

Section 4 of the Clayton Act, 15 U.S.C. § 15, allows Tilton to recover its reasonable attorney's fees as costs. *See also 9/22/93 Order,* at 13. Furthermore, "a prevailing antitrust plaintiff is entitled to recover a reasonable attorney's fee for every item of service which, at the time rendered, would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest in the pursuit of a successful recovery of antitrust damages." *Twin City Sportservice, Inc. v. Charles O. Finley & Co.,* 676 F.2d 1291, 1313 (9th Cir.1982).

Tilton's attorney's fee request on its antitrust claims seems reasonable here. This was a complex case requiring that Tilton prove to the jury that AP had intentionally attempted to prevent Tilton from entering the carbon-to-carbon clutch market. Tilton's counsel was required to present extensive documentary and testimonial evidence regarding this claim; thus, the amount of time spent on such an arduous task appears reasonable.

## 2. *Conclusion*

After reviewing the *Kerr* factors and Tilton's documentation, and after rejecting AP's arguments to deny or reduce Tilton's request, the Court finds that Tilton's attorney's fee requests for both its patent and antitrust claims are reasonable. AP initiated this lawsuit, aggressively prosecuted this case, and in large part, caused Tilton to incur the attorney's fees it now claims in this case. Tilton achieved remarkable results in its defense of its patent claim and its prosecution of its own antitrust action. Tilton should not be denied its reasonable fees here.

Accordingly, the Court **GRANTS** Tilton's motion for **$1,841,906.00** in attorney's fees on its patent claim, and its request of **$1,036,-918.25** in attorney's fees on its antitrust claim.

## IV. *Expenses*

In its September 22, 1993 and November 18, 1993 orders, the Court held that Tilton was entitled to the following "out-of-pocket" expenses aside from its reasonable costs: facsimile expenses, Lexis charges, long distance telephone charges, Federal Express charges, secretarial overtime charges, trial supply expenses, postage, messenger fees, hotel and travel expenses, parking expenses, teleconference expenses, and mock trial expenses. However, the Court specifically found that Tilton was not entitled to its air conditioning expenses because these are not of the type normally billed to clients. The Court then concluded that the only remaining issue with respect to these expenses was whether the specific amounts claimed by Tilton are reasonable.

A second issue the Court must resolve involves whether Tilton, as a prevailing antitrust plaintiff, is entitled to its actual expert witness fees over the statutory maximum. In its September 22, 1993 order, the Court requested further briefing on this issue. The Court has reviewed the supplemental briefs and will set forth its ruling in its discussion of Tilton's antitrust expense award below.

### A. *AP's Objections to Expenses Request*

In its opposition papers, AP contends that Tilton cannot recover any of its "out-of-pock-et" expenses because it is only entitled to its statutory costs under 28 U.S.C. § 1920; alternatively, AP argues that Tilton's expenses request should be reduced because: (1) Tilton fails to show that such expenses were only incurred with respect to Tilton's patent and antitrust claims, and (2) that such expenses were reasonably incurred.[5]

The Court has already rejected AP's contention that Tilton may only recover its Section 1920 costs. *See 11/18/93 Order.* As to AP's alternative arguments, the Court finds that Tilton has properly marked and segregated its expenses to include only those recoverable under its patent and antitrust claims for the same reasons discussed in Section III.A.1. & 2. above. However, the Court does believe that it must resolve the issue of the reasonableness of Tilton's expenses, and it does so below.

### B. *Reasonableness of Tilton's Expenses Request*

#### 1. *Expenses Previously Approved by Court*

In determining a "reasonable" award, the Court must balance a conservative approach towards Tilton's award against the fact that Tilton should be fully compensated for having to litigate this action against a willful infringer and antitrust violator such as AP. *See Mathis,* 857 F.2d at 757–58 ("[N]othing in the [American] Rule or statutes impedes or precludes a district court from exercising its inherent equitable power to make whole a party injured by an egregious abuse of the judicial process.").

■ A review of the voluminous records submitted by Tilton in July and November 1993 reveals that Tilton has properly supported and documented its out-of-court expenses, and such expenses appear to be reasonable given the exceptional circumstances of this case. *See* discussion of *Kerr* factors above. Specifically, the Court awards Tilton these expenses in the following amounts:

---

**5.** AP's argument that Tilton's requested expenses are not of the type normally billed to fee-paying clients was rejected previously by this Court. *See 11/18/93 Order,* at 4.

| | |
|---|---|
| (1) facsimile expenses: | $ 5,471.50 |
| (2) Lexis charges: | $ 35,120.50 |
| (3) long dist. tel. charges: | $ 1,336.25 |
| (4) Federal Express charges: [6] | $ 2,242.18 |
| (5) secretarial overtime: | $ 36,527.75 |
| (6) trial supply expenses: | $ 20,958.64 |
| (7) postage: | $ 542.19 |
| (8) messenger fees: | $ 14,642.93 |
| (9) hotel and travel charges: | $ 58,487.17 |
| (10) parking charges: | $ 3,626.16 |
| (11) teleconference charges: | $ 12,720.61 |
| (12) mock trial expenses: | $ 143.32 |
| **TOTAL AWARD** | **$191,819.20** |

### 2. Recoverability of Expert Witness Fees in Patent Case

▆▆▆▆The Court held that, given the jury's finding of willfulness, "Tilton should be awarded its reasonable costs" with respect to its patent case. *9/22/93 Order*, at 24–25. This included all of Tilton's reasonable expert witness fees except for the fees of Michael Burroughs. *Id.* at 25. Tilton resubmitted receipts for its patent experts in its October 1993 submission.

Upon reviewing the July and October 1993 documentation supporting its claim, the Court finds Tilton's expert witness fees to have been reasonably incurred given the factual and legal intricacy of Tilton's patent claim, which was further complicated by AP's having raised the many defenses discussed above. Moreover, the Court finds that the amounts charged by these experts are likewise reasonable. The Court therefore awards Tilton its expert witness fees as follows:

| | |
|---|---|
| (1) Edward Brenner | $ 3,300.00 |
| (2) Robert Tarrozzi | $ 19,658.08 |
| (3) Carroll Smith | $ 0.00 [7] |
| (4) Donald Peterson | $ 62,787.74 |
| (5) David Nolte | $116,069.50 |
| **GRAND TOTAL** | **$201,815.32** |

### 3. Recoverability of Expert Witness Fees in Antitrust Case

▆▆▆▆As the prevailing plaintiff in an antitrust case, Tilton argues that it is entitled to expert witness fees above and beyond the statutory limit of $40 per day. In support, Tilton cites *Hasbrouck v. Texaco, Inc.*, 631 F.Supp. 258 (E.D.Wash.1986), *aff'd in rele-*

vant part and rev'd in part, 879 F.2d 632 (9th Cir.1989). In *Hasbrouck*, the district court, having reviewed plaintiffs' expert witness fees, concluded that "the retention by plaintiffs of the experts ... was necessary due to the defenses interposed by [defendant]. The court further finds the fees of these experts are reasonable." *Id.* at 268. Accordingly, the court awarded plaintiffs all their requested expert witness fees. *Id.*

In response, AP maintains that the Supreme Court in *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 442, 107 S.Ct. 2494, 2497–98, 96 L.Ed.2d 385 (1987), determined that 28 U.S.C. § 1821 and § 1920 statutorily limit the witness fees to be paid to a prevailing party. AP next relies on a Tenth Circuit case, *Reazin v. Blue Cross and Blue Shield of Kansas*, 899 F.2d 951, 981 (10th Cir.), *cert. denied*, 497 U.S. 1005, 110 S.Ct. 3241, 111 L.Ed.2d 752 (1990), which held that, citing *Crawford*, a prevailing antitrust plaintiff may not be awarded expert witness fees beyond the $40 per day limit.

The Court agrees with Tilton on this issue. Tilton has cited Ninth Circuit authority providing for the award of expert witness fees if the expert was necessary to the litigation and if the expert's fees are reasonable. *See Hasbrouck*, 631 F.Supp. at 268. AP cites no contradictory Ninth Circuit cases limiting such an award to statutory damages only, and the Court has already held that *Crawford* does not specifically limit a prevailing antitrust *plaintiff* to statutory damages only. *See 9/22/93 Order*, at 16–17.

▆▆▆▆Applying *Hasbrouck*, the Court finds that Tilton's request for $90,123.50 in fees for David Nolte's services is reasonable in light of the fact that Nolte's testimony, as Tilton's only antitrust expert, was necessary to provide the jury with a factual basis from which to ascertain the damages to Tilton from AP's anticompetitive conduct. Further, having previously found Nolte's billing rate to be

---

**6.** AP argues that Tilton should not recover these expenses because it could have used the regular mail instead. However, because of the numerous *ex parte* and emergency applications submitted in this case, the Court finds that Tilton's expenses on this item are reasonable.

**7.** Tilton submits documentation supporting the fact that it deposed Carroll Smith on October 23, 1992, but the Court has not been able to locate any separate document setting forth Smith's expert witness fee. Accordingly, the Court does not award Tilton any such fee.

reasonable, the Court awards Tilton $90,-123.50 in expert witness fees for the services of Nolte.

*V. Conclusion*

For all of the foregoing reasons, the Court **AWARDS** Tilton the following:

(1) $1,841,906.00 in attorney's fees on its patent claim;

(2) $1,036,918.25 in attorney's fees on its antitrust claim;

(3) $191,819.20 in expenses previously awarded;

(4) $201,815.32 in expert witness fees on its patent claim; and

(5) $90,123.50 in expert witness fees on its antitrust claim.

IT IS SO ORDERED.