**S & M MATERIALS COMPANY,**
**Plaintiff-Appellant,**
v.
**SOUTHERN STONE COMPANY, INC.,**
**Defendant-Appellee.**

No.  79–2336.

United States Court of Appeals,
Fifth Circuit.

Feb. 21, 1980.

Rehearing and Rehearing En Banc
Denied March 25, 1980.

Charles A. Gower, Stephen G. Gunby, Owens, Littlejohn & Pugh, F. Houser Pugh, Columbus, Ga., for plaintiff-appellant.

Hatcher, Stubbs, Land, Hollis & Rothschild, Albert W. Stubbs, William B. Hardegree, Columbus, Ga., for defendant-appellee.

Before BROWN, HILL and RANDALL, Circuit Judges.

JAMES C. HILL, Circuit Judge:

Southern Stone Co., appellee, owns and operates a dolomite rock quarry in Auburn, Alabama. High transportation costs and the bulky product's low value combine to give appellee a natural monopoly over the supply of raw dolomite rock in the Auburn area. S & M Materials Co., appellant, began life as a wholesaler of agricultural lime, which is derived from dolomite rock. In 1975, appellant decided to integrate backwards, and built a facility in Seale, Alabama for processing dolomite rock into agricultural lime. The decision to locate at Seale—within appellee's natural monopoly area—assumed that appellee would be a dependable supplier of dolomite rock, as it had theretofore been of agricultural lime. But when appellee learned that appellant was manufacturing agricultural lime and selling it as a horizontal competitor, appellee raised appellant's price—and appellant's price alone—for dolomite rock by slightly less than 50%. Appellant circumvented this action for a time by engaging one Bi-City Concrete Co. secretly to act as a broker, purchasing dolomite rock from appellee (at the normal price) and immediately reselling it to appellant. Appellee soon got wind of this scheme, however, and increased Bi-City's price too.

Claiming that appellee's selective price increases forced it out of business, appellant brought the instant suit under § 2(a) of the Robinson-Patman Act. 15 U.S.C. § 13(a) (1976).[1] Following sixteen months of opportunity for discovery, during which time appellee cooperatively responded to appellant's discovery requests, the trial court entered summary judgment for appellee on the ground, *inter alia*, that appellant had adduced no evidence of preferential sales "in commerce." We affirm.

■■■ Section 2(a) of the Robinson-Patman Act, 15 U.S.C. § 13(a) (1976), prohibits persons "engaged in commerce" from "discriminat[ing]" in price between different purchasers of commodities of like grade and

1. Appellant has seen fit to proceed solely under the Robinson-Patman Act, and does not assert a cause of action under § 2 of the Sherman Act.

15 U.S.C. § 2 (1976). The scope of our decision is, of course, similarly so limited.

quality, where either or any of the purchases involved in such discrimination are in commerce," and "where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce." The jurisdictional reach of this statute is far less than the commerce clause would allow. In contrast with the Sherman Act, by which Congress exercised "the utmost extent of its Constitutional power in restraining trust and monopoly agreements," *United States v. South-Eastern Underwriters Association,* 322 U.S. 533, 558, 64 S.Ct. 1162, 1176, 88 L.Ed. 1440 (1944); *see Hospital Building Co. v. Trustees of Rex Hospital,* 425 U.S. 738, 743 & n.2, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976), "the distinct 'in commerce' language of the Clayton and Robinson-Patman Act[s] . . . denote[s] only persons or activities within the flow of interstate commerce—the practical, economic continuity in the generation of goods and services for interstate markets . . . ." *Gulf Oil Corp. v. Copp Paving Co.,* 419 U.S. 186, 195, 95 S.Ct. 392, 398, 42 L.Ed.2d 378 (1974). *Accord, United States v. American Building Maintenance Industries,* 422 U.S. 271, 276, 95 S.Ct. 2150, 45 L.Ed.2d 177 (1975). The "in commerce" requirement, moreover, delimits both the universe of "persons" who are subject to the Act and the type of transactions that can constitute a violation thereof. Not the alleged violator, merely, but the discrimination sought to be charged must also involve a transaction "in commerce."

■ In the instant case, appellee clearly is "engaged in commerce" within the meaning of § 2(a). Appellee regularly accepts orders for agricultural lime from Georgia customers, and loads it onto trucks bound for that state. It is of no moment that the terms of such shipments are free on board appellee's quarry, or that title to the goods may pass in Alabama. The obviously interstate character of appellee's Georgia lime sales cannot be so easily transformed.

■ But the foregoing conclusion does not end our inquiry, because appellant's antitrust claim does not relate to agricultural lime. The discrimination for which appellant sues involves the quite different product of dolomite rock, from which lime is made. Section 2(a) applies only to discrimination in price among "commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce." Thus, notwithstanding that appellee is itself "engaged in commerce," jurisdiction under the statute depends additionally on the existence of a sale "in commerce" of dolomite rock or a commercially fungible product, *cf. Fred Meyer, Inc. v. FTC,* 359 F.2d 351, 359 (9th Cir. 1966), *rev'd on other grounds,* 390 U.S. 341, 88 S.Ct. 904, 19 L.Ed.2d 1222 (1968), with which appellee's sales to appellant can be compared. And it is here that appellant's case falls down.

■ At the time summary judgment was entered for appellee, appellant was unable, despite sixteen months of discovery, to point to a single interstate sale of dolomite rock by appellee. Although appellee has sold dolomite rock to foreign buyers—appellant itself is a Georgia corporation—the domicile of the purchaser is not controlling. However anachronistic it may today seem, the cases establish that the state of being "in commerce" under § 2(a) requires physical movement of the relevant product across a state line. *See Gulf Oil Corp. v. Copp Paving Co.,* 419 U.S. 186, 200, 95 S.Ct. 392, 42 L.Ed.2d 378 (1974), quoting *Hiram Walker, Inc. v. A & S Tropical, Inc.,* 407 F.2d 4 (5th Cir.), *cert. denied,* 396 U.S. 901, 90 S.Ct. 212, 24 L.Ed.2d 177 (1969); *Littlejohn v. Shell Oil Co.,* 483 F.2d 1140, 1144 (5th Cir.) (en banc), *cert. denied,* 414 U.S. 1116, 94 S.Ct. 849, 38 L.Ed.2d 743 (1973); *Cliff Food Stores, Inc. v. Kroger, Inc.,* 417 F.2d 203, 208–10 (5th Cir. 1969). So far as the record shows, appellee has never shipped a single dolomite rock, either directly or indirectly, out of the state of Alabama. We think that appellant had ample opportunity to discover the existence, if any, of preferential dolemite rock sales "in commerce," and its failure to do so warranted the entry of summary judgment on appellant's Robinson-Patman claim.

AFFIRMED.