663 F.2d 930
 1981-2 Trade Cases 64,401
 Ricky HASBROUCK, d/b/a Rick's Texaco; James O. Sills, d/b/a
Jim's Springhill Texaco Service; Alva N. Blue, d/b/a Blue's
Texaco; John W. Bevan, d/b/a Bevan's Texaco and Towing and
Bevan's Northwood Texaco; Ricky A. Rigg, d/b/a Five Mile
Texaco; Clifford N. Robinson, d/b/a Robinson's Freeway
Texaco; Gene C. Robinson, d/b/a Hillyard Texaco; Albert E.
Allen, d/b/a Van's Texaco; Harold C. Hardwick, d/b/a
Harold's Texaco Service & Towing; Henry Rigg, d/b/a Hank's
Texaco; Vincent Lies, d/b/a Lie's Texaco & U-Haul; Ralph O.
Webber, d/b/a Webber's Auto Repair & Service Station,
Plaintiffs-Appellants,
v.
TEXACO, INC., a foreign corporation, Defendant-Appellee.
 No. 80-3160.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Sept. 10, 1981.
Decided Dec. 14, 1981.
 
 John S. Ebel, Seattle, Wash., Robert Whaley, Lucinda Eyman, Spokane, Wash., for plaintiffs-appellants.
 P. W. Schaefer, White Plains, N. Y., argued, for defendant-appellee; Mitlon S. Schubin, Kaye, Scholer, Fierman, Hays & Handler, New York City, P. W. Schaefer, White Plains, N. Y., on brief.
 Appeal from the United States District Court for the Eastern District of Washington.
 Before SNEED and CANBY, Circuit Judges, and HOFFMAN*, District Judge.
 SNEED, Circuit Judge:
 
 
 1
 Eleven "independent" Texaco service station operators (appellants) charged their supplier, Texaco, Inc., (appellee), with price discrimination in violation of section 2(a) of the Robinson-Patman Act, 15 U.S.C. § 13(a). Treble damages were sought under section 4 of the Clayton Act, 15 U.S.C. § 15. The jury returned a verdict in appellants' favor. The district court, concluding that the verdict had been infected by erroneous jury instructions, granted appellee's motion for judgment notwithstanding the verdict (J.N.O.V.). We reverse and remand for a new trial. We affirm, however, as to two issues.
 
 I.
 FACTUAL AND PROCEDURAL BACKGROUND
 
 2
 Appellants' grievances arise out of appellee's gasoline pricing policy in the Spokane, Washington area during the years 1972-1979. While charging appellants uniform "Retailer Tankwagon" prices, appellee granted "distributor" discounts to two other area companies. Appellants alleged that, though nominally wholesalers, these companies increasingly became directly involved in retailing. Further, when they did not own the repurchasing outlet outright, these favored buyers allegedly passed on all or part of the original price discount to the retailer. Injury to competition in the retail market is said to have resulted from this discriminatory pricing scheme.
 
 
 3
 Appellants requested and received jury instructions on proof of damages based on Fowler Manufacturing Co. v. Gorlick, 415 F.2d 1248 (9th Cir. 1969), cert. denied, 396 U.S. 1012, 90 S.Ct. 571, 24 L.Ed.2d 503 (1970). Fowler adopted the "automatic damages" rule in price discrimination cases, whereby minimum damages equal to the product of the illegal price differential times the quantity of plaintiff's purchases can be inferred from proof of price discrimination alone. Relying on this inference, appellants chose not to introduce sufficient evidence from which a jury could estimate actual dollar losses resulting from diminished sales or narrowed profit margins. The jury apparently applied the Fowler rule as instructed.
 
 
 4
 Appellee moved for J.N.O.V. or a new trial. The court accepted appellee's argument that the Fowler instructions were erroneous because Fowler either was distinguishable, had been overruled sub silentio, or was simply bad law. A preferred rule was found in cases requiring more rigorous proof of damages. See, e. g., Chrysler Credit Corp. v. J. Truett Payne, Inc., 607 F.2d 1133 (5th Cir. 1979), aff'd sub nom. J. Truett Payne Co. v. Chrysler Motors Corp., --- U.S. ----, 101 S.Ct. 1923, 68 L.Ed.2d 442 (1981). Thus, because appellants had not met this higher standard of proof and admitted the extreme difficulty of meeting such a standard should Fowler not control, J.N.O.V. was granted. Numerous other grounds urged by appellee were rejected and the new trial alternative was conditionally denied. Appellant timely filed this appeal.
 
 
 5
 The Supreme Court affirmed J. Truett Payne during the pendency of this appeal. In doing so, the Court expressly rejected Fowler and the automatic damages theory. 101 S.Ct. at 1926-27 & 1927 n.2. Fowler clearly is no longer valid law in this circuit.
 
 II.
 THE EFFECT OF THE DEMISE OF FOWLER
 
 6
 J. Truett Payne confirms the trial court's ultimate conclusion that the Fowler measure of damages should not be applied in Robinson-Patman cases. That, however, does not dictate summary affirmance of the J.N.O.V. If Fowler was still valid and not properly distinguishable at the time of the ruling on the J.N.O.V. motion, it should have been applied. District courts are bound by the law of their own circuit. E. g., Bolf v. Berklich, 401 F.Supp. 74, 76 (D.Minn.1975). They are not to resolve splits between circuits no matter how egregiously in error they may feel their own circuit to be. United States ex rel. Winfield v. Cascles, 403 F.Supp. 956, 960 (E.D.N.Y.1975). To the extent the district court based its J.N.O.V. on its own dissatisfaction with Fowler, it erred.
 
 
 7
 We do not feel that Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977), or the Ninth Circuit cases relied upon by appellee, e. g., California Computer Products, Inc. v. International Business Machines Corp., 613 F.2d 727 (9th Cir. 1979); Rutledge v. Electric Hose & Rubber Co., 511 F.2d 668 (9th Cir. 1975), necessarily overruled sub silentio Fowler.[1] Nor do we feel that Fowler was clearly distinguishable. Thus, appellants' reliance on Fowler at the time of trial was justified. Granting J.N.O.V. in appellee's favor because of that reliance was an abuse of discretion. Further, the record does not support the contention that appellants admitted inability to prove damages under any rule but Fowler. Accordingly, the J.N.O.V. must fall and a new trial be ordered, this trial to conform with the analysis of J. Truett Payne, supra, 101 S.Ct. at 1926-28. This parallels the choice of the Seventh Circuit in a case nearly identical with this one. Vanco Beverages, Inc. v. Falls City Industries, Inc., 654 F.2d 1224, 1231 (7th Cir. 1981); see also Brunswick, supra, 429 U.S. at 483 n.6, 97 S.Ct. at 694 n.6.
 
 III.
 THE SCOPE OF THE NEW TRIAL
 
 8
 The only question remaining is the scope of the new trial. Courts of appeal have broad discretion to grant new trials on all or only some issues. Gasoline Products Co. v. Champlin Refining Co., 283 U.S. 494, 51 S.Ct. 513, 75 L.Ed. 1188 (1931); Heckman v. Federal Press Co., 587 F.2d 612 (3d Cir. 1978); see also United Air Lines, Inc. v. Wiener, 286 F.2d 302 (9th Cir.), cert. denied, 366 U.S. 924, 81 S.Ct. 1352, 6 L.Ed.2d 384 (1961) (reversing a bifurcation order). In fashioning their orders these courts must keep in mind that the item to be retried must be "so distinct and separable from the others that a trial of it alone may be had without injustice." Gasoline Products, supra, 283 U.S. at 500, 51 S.Ct. at 515.
 
 
 9
 We find that two of the issues decided below are sufficiently "distinct and separable" from the measure of damage question that, in the interest of judicial economy, they may be presently disposed of without affecting the fairness of the contemplated new trial. The first issue involves the appellee's claim of implied antitrust immunity for its pricing policies during the period of federal mandatory gasoline price ceilings. The trial court correctly rendered partial summary judgment against this claim. See Oahu Gas Service, Inc. v. Pacific Resources Inc., 460 F.Supp. 1359 (D. Hawaii 1978); Inter City Oil Corp. v. Murphy Oil Corp., (1976) 1 Trade Cases (CCH) P 60,94 8 (D.Minn.1976); but see Evanson v. Union Oil Co., 4 En. Mngm't (CCH) P 26,158 (D.Minn.1979). The second issue involves the jury's implicit finding that the sales in question occurred "in commerce," a jurisdictional prerequisite to a Robinson-Patman claim. See Gulf Oil Corp. v. Copp Paving Co., 419 U.S. 186, 95 S.Ct. 392, 42 L.Ed.2d 378 (1974); 15 U.S.C. § 13(a). This jurisdictional issue is normally a fact question for the jury to resolve. E. g. Edward J. Sweeney & Sons, Inc. v. Texaco, Inc., 478 F.Supp. 243, 272-73 n.62 (E.D.Pa.1979), aff'd, 637 F.2d 105 (3d Cir. 1980), cert. denied, --- U.S. ----, 101 S.Ct. 1981, 68 L.Ed.2d 300 (1981). Passage of title or the terms of shipment, although relevant, does not control. S & M Materials Co. v. Southern Stone Co., 612 F.2d 198, 200 (5th Cir.), cert. denied, 449 U.S. 832, 101 S.Ct. 101, 66 L.Ed.2d 37 (1980). The evidence submitted by appellants, including proof of the existence of a national exchange agreement between appellee and another refiner covering the gasoline involved, justified submission of the question to the jury and supported the jury's ultimate conclusion that the jurisdictional requirement was satisfied. Cf. Hardrives Co. v. East Coast Asphalt Corp., 329 F.2d 868 (5th Cir.), cert. denied, 379 U.S. 903, 85 S.Ct. 192, 13 L.Ed.2d 176 (1964) (dealing with a similar exchange agreement). Thus, since we find no error in the treatment of the immunity and interstate commerce issues below and believe that the measure of damages can be fairly calculated on remand without relitigating these collateral issues, we affirm the trial court's disposition of these two issues.
 
 
 10
 The appellants would have us affirm the jury's finding of liability and remand on the measure of damages issue alone. We do not feel, however, that the determination of liability is fairly separable from the calculation of damages in a private antitrust action such as this one. See Alabama v. Blue Bird Body Co., 573 F.2d 309 (5th Cir. 1978) (noting the overlap between proof of injury for liability purposes and for damage calculation purposes under Clayton section 4). Accordingly, we remand for a new trial on both the issues of liability and amount of damages.
 
 
 11
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED IN PART.
 
 
 
 *
 Honorable Walter E. Hoffman, Senior United States District Judge for the Eastern District of Virginia, sitting by designation
 
 
 [1]
 While we are aware that the Supreme Court relied upon Brunswick in deciding J. Truett Payne, we note that the Court also resorted to legislative history to buttress its conclusion. 101 S.Ct. at 1927. Appellants cannot be penalized simply for failure to read Brunswick as overruling Fowler sub silentio