879 F.2d 632
 58 USLW 2084, 1989-2 Trade Cases 68,661
 Ricky HASBROUCK, d/b/a Rick's Texaco, Albert E. Allen, John
W. Bevan, Alva N. Blue, Vincent Lies, Henry Rigg, Ricky A.
Rigg, Molly Robinson, Gene C. Robinson, James O. Sills,
Ralph O. Webber, and Harold Hardwick, Plaintiffs-Appellees,
v.
TEXACO, INC., Defendant-Appellant.
 No. 86-3833.
 United States Court of Appeals,
Ninth Circuit.
 Argued July 11, 1988.
Submitted Oct. 12, 1988.
Decided July 10, 1989.
 
 Mark D. Litvack, Texaco, Inc., White Plains, N.Y., and William Fremming Nielsen, Paine, Hamblen, Coffin Brooke & Miller, Spokane, Wash., for defendant-appellant.
 Lucinda Whaley and Robert H. Whaley, Winston & Cashatt, Spokane, Wash., and John S. Ebel, Culp, Guterson & Grader, Seattle, Washington, for plaintiffs-appellees.
 Appeal from the United States District Court for the Eastern District of Washington.
 Before POOLE, CANBY and LEAVY, Circuit Judges.
 LEAVY, Circuit Judge:
 OVERVIEW
 This appeal is from an order granting attorney's fees of $1,713,191 and costs of $173,111 in an antitrust action that has spanned ten years, required two jury trials and an appellate decision,[1] and involved a petition for certiorari to the Supreme Court. Ultimately, the plaintiffs received a treble damage award of $1,349,700.
 The district court's award of attorneys' fees is affirmed in part, reversed in part, and remanded.
 
 BACKGROUND OF THE LITIGATION
 
 1
 In January 1976, twelve independent retailers of gasoline in Spokane, Washington, filed an action against Texaco, Inc. (Texaco) for price discrimination in violation of the Robinson-Patman Act, 15 U.S.C. Sec. 13(a) (West 1982), and Washington State statutes for consumer protection and unfair practices. The plaintiffs alleged that throughout the 1970's Texaco sold identical gasoline at substantially lower prices to other Texaco retail stations with whom they competed. Three and one-half years of discovery ensued.
 
 
 2
 After the first month-long trial in August 1979, the plaintiffs received a judgment for $2,551,450.92 in treble damages. However, the district court granted judgment n.o.v. for Texaco, ruling that the instructions on proof of injury and damages were in error. The plaintiffs appealed. We reversed, and remanded for a new trial on both liability and damages. Hasbrouck v. Texaco, 663 F.2d 930, 934 (9th Cir.1981). Texaco unsuccessfully petitioned for rehearing. The Supreme Court denied Texaco's petition for certiorari. 459 U.S. 828, 103 S.Ct. 63, 74 L.Ed.2d 65 (1982).
 
 
 3
 The second trial took most of June 1985 and resulted in a verdict for the plaintiffs. They were awarded $1,349,700 in treble damages. The trial involved a complicated new defense of "cost justification," which had been precluded in the first trial by Texaco's failure to timely produce supporting discovery materials. The allowance of this defense (which plaintiffs' counsel strongly objected to) required substantial additional discovery. Two years were required to complete discovery and prepare for the second trial. During that time, the plaintiffs tried unsuccessfully to settle with Texaco. The plaintiffs' counsel spent 5,000 hours on the second trial, in addition to the 6,550 hours they spent on the first trial. The plaintiffs were unable to pay their counsel for the second trial, so plaintiffs' counsel expended $124,245.25 of their law firms' funds on the action. This amount had not been reimbursed by 1986, the year attorney's fees were awarded.
 
 
 4
 Subsequent to the petition for attorney's fees, the parties stipulated that plaintiffs' counsel had spent the time claimed and expended the costs set forth, and that the time and costs claimed were reasonable.
 
 
 5
 On retrial, the district court judge spent five years on this action. He wrote a detailed twenty-eight page memorandum and order on the petition for attorney's fees. He enhanced the lodestar amount[2] of $1,284,896 by one-third "solely because of the uncertainty of the recovery of any fee or compensation in this action." 631 F.Supp. 258. Texaco timely appealed from this order.
 
 STANDARD OF REVIEW
 
 6
 An award of attorney's fees as part of the cost of a successful antitrust suit is mandatory. Twin City Sportservice Inc. v. Charles O. Finley & Co., 676 F.2d 1291, 1312 (9th Cir.), cert. denied, 459 U.S. 1009, 103 S.Ct. 364, 74 L.Ed.2d 400 (1982). A trial court has discretion to decide the amount of a reasonable fee. Its decision will not be disturbed absent an abuse of discretion or clear error of law. Id.
 
 DISCUSSION
 Jurisdiction
 
 7
 The appellees challenge the timeliness of Texaco's notice of appeal. A timely notice of appeal is mandatory and jurisdictional. Browder v. Director, Dep't of Corrections, 434 U.S. 257, 264, 98 S.Ct. 556, 560, 54 L.Ed.2d 521 (1978).
 
 
 8
 The district court's order granting attorney's fees and costs was filed on March 21, 1986. Texaco timely filed its notice of appeal on March 27, 1986. However, on March 31, 1986, the appellees moved to clarify the judgment under Federal Rule of Civil Procedure 52(b).[3] The appellees sought clarification of what specific costs the court had awarded, and a determination of what rate of interest should apply to the fee award.
 
 
 9
 Federal Rule of Appellate Procedure 4(a)(4) applies to a Rule 52(b) motion. Rule 4(a)(4) provides (emphasis added):
 
 
 10
 If a timely motion under the Federal Rules of Civil Procedure is filed in the district court by any party: ... (ii) under Rule 52(b) to amend or make additional findings of fact, whether or not an alteration of the judgment would be required if the motion is granted; ... the time for appeal for all parties shall run from the entry of the order ... granting or denying ... such motion. A notice of appeal filed before the disposition of any of the above motions shall have no effect. A new notice of appeal must be filed within the prescribed time measured from the entry of the order disposing of the motion as provided above.
 
 
 11
 Texaco did not file another notice of appeal after the court clarified its March 21, 1986 order. If the appellees' motion for clarification is properly characterized as a Rule 52(b) motion, we lack jurisdiction over the appeal. Texaco, however, contends that Rule 4(a)(4) is inapplicable because the appellees' motion was really a Rule 60(a) motion,[4] even though the appellees brought it under Rule 52(b).
 
 
 12
 The nomenclature the movant uses is not controlling. Sea Ranch Ass'n v. California Coastal Zone Conservation Comm'ns, 537 F.2d 1058, 1061 (9th Cir.1976). This court must decide whether a motion, however styled, is appropriate for the relief requested. Miller v. Transamerican Press, Inc., 709 F.2d 524, 527 (9th Cir.1983).
 
 
 13
 With this in mind, we consider the relief sought by the March 31, 1986 motion. The fee petition had requested costs from both trials; however, the March 21, 1986 order allowed costs substantially less than those requested. In their motion, the appellees sought to clarify whether the court awarded costs from the second trial only. Further, although the fee petition requested interest at the statutory rate from the date of the judgment of June 25, 1985 (which had specified that interest was to run at 7.7%), the order on the fee petition was silent on this matter. The appellees stated in their motion: "[p]laintiffs by this Motion are not necessarily seeking any reconsideration of the amount awarded, but only a clarification of the Court's opinion."On May 12, 1986, the district court issued an order clarifying its previous order. The order stated in part:
 
 
 14
 On March 21, 1986, this court filed its Memorandum Opinion and Order Re: Plaintiffs' Motion for Attorney Fees. In that opinion ... the court stated that the plaintiffs' total costs were $182,895.14. The court disallowed $9,784 of plaintiffs' requested costs and therefore awarded costs of $173,000. This computation was in error in that the figure of $182,895.14 represented only the costs incurred from 1979 through 1985. The court inadvertently omitted to allow the plaintiffs' their costs from 1975 to 1979 in the amount of $125,487.44. If this court now had jurisdiction to amend its award of costs it would do so and include the 1975-1979 costs of $125,487.44.
 
 
 15
 Plaintiffs further seek clarification of the amount of interest on the costs and attorney fees. It was the intent of the court that interest thereon should be at the rate of 7.7% from June 25, 1985.
 
 
 16
 A court's failure to memorialize part of its decision is a clerical error. Miller, 709 F.2d at 527. The May 12, 1986 order shows the court inadvertently failed to memorialize part of its decision regarding the costs of the first trial and the rate of interest. The appellees did not request the court to alter or amend the judgment, an action requiring a substantive change, Bordallo v. Reyes, 763 F.2d 1098, 1102 (9th Cir.1985), and the court's clarification does not reflect that a substantive change is necessary. See Miller, 709 F.2d at 527 (contrasting clerical errors with substantive changes that are required by alterations or amendments under Rule 59(e) (motions to alter or amend a judgment)). See also Buchanan v. Stanships, Inc., 485 U.S. 265, ----, 108 S.Ct. 1130, 1131-32, 99 L.Ed.2d 289 (1988) (a motion to alter or amend a judgment to award costs under Rule 54(d) does not come within the meaning of Rule 59(e), because costs do not relate to substantive issues; accordingly, Rule 4(a)(4) is inapplicable) and Durham v. Kelly, 810 F.2d 1500, 1502-03 (9th Cir.1987) (same).
 
 
 17
 The power to correct clerical errors of omission derives from Rule 60. Miller, 709 F.2d at 527. Therefore, the motion of May 31, 1986, requesting clarification is construed properly under Rule 60(a). Because a Rule 60 motion does not affect the validity of a previously filed notice of appeal, id., Rule 4(a)(4) is inapplicable, and this court has jurisdiction.
 
 
 18
 Whether Enhancement of the Fee Is Proper After Delaware Valley II
 
 
 19
 The district court applied a multiplier to the attorneys' fees solely for the risk of loss they assumed. The decision was issued before the Supreme Court issued its opinion in Pennsylvania v. Delaware Valley Citizens' Council for Clean Air (Delaware Valley II ), 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987). In Delaware Valley II, the Court decided whether a multiplier is appropriate for assuming the risk of loss in a contingency case under a fee-shifting statute. Section 4 of the Clayton Act, 15 U.S.C. Sec. 15, is a fee-shifting statute: it allows a successful treble damage plaintiff to recover reasonable attorney's fees as costs. Twin City, 676 F.2d at 1312. We requested supplemental briefing from the parties on Delaware Valley II 's effect on this case, and we now decide whether use of the multiplier was proper.
 
 
 20
 Recently, we described the circumstances in which a fee may be enhanced after Delaware Valley II:
 
 
 21
 [A] majority of the Court held that enhancing a fee award for contingency is permissible if two prerequisites identified in Justice O'Connor's concurrence are met. First, the fee applicant must establish that "without an adjustment for risk the prevailing party 'would have faced substantial difficulties in finding counsel in the local or other relevant market.' " Id. 107 S.Ct. at 3091 (O'Connor, J. concurring). Second, any enhancement for contingency must reflect "the difference in market treatment of contingent fee cases as a class, rather than ... the 'riskiness' of any particular case." Id. at 3089 (emphasis in original). The fee applicant bears the burden of proving the degree to which the relevant market compensates for contingency. Id. at 3090.
 
 
 22
 Fadhl v. City and County of San Francisco, 859 F.2d 649, 650 (9th Cir.1988) (footnote and citations omitted).
 
 
 23
 In its opinion and order, the district court stated it was particularly impressed with testimony "that competent counsel would not undertake representation of plaintiffs in cases such as this if they were only paid their regular hourly rates, but only if the plaintiffs were successful in the litigation." A past chair of the Antitrust Section of the Washington State Bar Association, Thomas J. Greenan, an antitrust attorney with twenty-two years of experience, testified before the district court on the difficulty of successfully litigating a Robinson-Patman case. He stated:
 
 
 24
 If there was no enhancement--if there was no opportunity for an enhanced recovery in contingent fee antitrust litigation, I don't believe anyone would take it. Why would they, unless, of course, it was the only sort of thing you could do because you didn't have other work. But that's not true of most of the good antitrust practitioners I know. It is certainly not true of either of the firms that represented the plaintiffs in this litigation. If you can go out and bill your time, representing clients in commercial litigation, at a straight hourly rate without risk to the attorney, there is absolutely no incentive at all to become involved in a circumstance where, if you don't recover, you don't get paid at all, but if you do recover, you get paid. Your pay is limited only by the hours that you have spent times your hourly rate. No one I know would do that. Certainly our firm, we wouldn't think about it.
 
 
 25
 Reporter's Transcript at 113.
 
 
 26
 This testimony establishes that without an adjustment for the risk of not prevailing in this case, the appellees "would have faced substantial difficulties in finding counsel in the local or other relevant market." Delaware Valley II, 483 U.S. at 731, 107 S.Ct. at 3089.
 
 
 27
 Greenan's testimony also establishes that in the relevant market (Robinson-Patman cases in Spokane, Washington), lawyers expect a greater return than their normal hourly rate if they should prevail. With respect to the particular difficulties of winning a Robinson-Patman case, he stated:
 
 
 28
 I dislike the Robinson-Patman Act very much because I have a deep-seated feeling that the obstacles before a plaintiff in that type of litigation are so overwhelming that one ... would have to be a brave person to venture into that thicket.
 
 
 29
 ....
 
 
 30
 I think Robinson-Patman litigation is among the most difficult types of cases that can be brought into federal courts; and, frankly, the obstacles that have been created in proving damages in those cases have made it apparent that it is very, very difficult for plaintiffs to succeed in recoveries under the Robinson-Patman Act in any monetary sense.
 
 
 31
 Reporter's Transcript at 109-110. Greenan stated that a multiplier of 1.5 to 2 would be appropriate compensation for the attorneys who undertook this case. His testimony was uncontroverted by Texaco.
 
 
 32
 In this case there is strong uncontroverted evidence on permissible factors to support the district court's award. We conclude that the district court did not " 'enhance [the] fee award any more than necessary to bring the fee within the range that would attract competent counsel.' " Fadhl, 859 F.2d at 651 (quoting Delaware Valley II, 483 U.S. at 733, 107 S.Ct. at 3091 (O'Connor, J. concurring)). We are also satisfied that the evidence shows why the lodestar amount would not be reasonable.
 
 
 33
 Enhancement For Work On The Fee Petition and An Amicus Brief
 
 
 34
 Texaco claims the district court should not have enhanced all portions of the attorneys' work, because not all of it involved a risk of loss. Texaco claims the district court should not have enhanced the work on the fee petition, because the court had already announced it would award attorneys' fees.
 
 
 35
 We have held it is an abuse of discretion to apply a multiplier to work on a fee petition, because the risk is greatly diminished at this stage of the litigation, when plaintiffs have prevailed. Clark v. City of Los Angeles, 803 F.2d 987, 992 (9th Cir.1986). Here, because the court announced its intention to award fees even before fee petition work began, the risk was diminished. Therefore, the district court abused its discretion by not deleting these hours before using the multiplier.
 
 
 36
 Texaco also claims the fee should not be enhanced for the plaintiffs' unsuccessful effort on an amicus curiae brief before the Supreme Court in the case of J. Truett Payne Co. v. Chrysler Motors Corp., 451 U.S. 557, 101 S.Ct. 1923, 68 L.Ed.2d 442 (1981). However, the appellees contend they were successful to the extent the Supreme Court upheld a doctrine they espoused, relating to proof of competitive injury in a price discrimination case.
 
 We have stated:
 
 37
 a prevailing antitrust plaintiff is entitled to recover a reasonable attorney's fee for every item of service which, at the time rendered, would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest in the pursuit of a successful recovery of anti-trust damages.
 
 
 38
 Twin City, 676 F.2d at 1313; see State of Ariz. v. Maricopa County Medical Soc'y, 578 F.Supp. 1262, 1268 (D.Ariz.1984) (applying this criterion to a fee application which included an amicus brief). We also held in Twin City that "a plaintiff is to receive compensation in fees for work which is related to the pursuit of both successful and unsuccessful antitrust claims." 676 F.2d at 1313.
 
 
 39
 Plaintiffs' counsel legitimately was involved with the case before the Supreme Court. It concerned the automatic damages rule, which was the law of this circuit at the time, and was used as a jury instruction in the first trial.[5] Thereafter, the judge granted judgment n.o.v. for Texaco, partially relying on the Fifth Circuit's decision which rejected the automatic damages rule.[6] See Chrysler Credit Corp. v. J. Truett Payne, Inc., 607 F.2d 1133, 1136 (5th Cir.1979), cert. granted, 449 U.S. 819, 101 S.Ct. 70, 66 L.Ed.2d 20 (1980). The Supreme Court ultimately rejected the automatic damage rule. J. Truett Payne, 451 U.S. at 561-63, 101 S.Ct. at 1926-27. Nonetheless, it was reasonable to award fees for the amicus effort as an item of service which would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest. Further, it is appropriate to enhance the fee for this service, since it involved the same risk of loss as the rest of the work.
 
 Proportionality
 
 40
 Texaco also contends that the award was improper, citing City of Riverside v. Rivera, 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986), for the proposition that the award must be proportional to the damages the plaintiffs recovered. However, we have observed twice that the plurality in Rivera rejected a rule of proportionality that would have limited attorney's fee awards under section 1988 to a proportion of the damages recovered in the underlying suit. Cunningham v. County of Los Angeles, 859 F.2d 705, 709 (9th Cir.1988), amended on other grounds, 869 F.2d 427 (9th Cir.1989); Thorne v. City of El Segundo, 802 F.2d 1131, 1143 (9th Cir.1986).
 
 
 41
 Whether The Contingent Fee Agreement Should Limit The Award
 
 
 42
 Texaco's final argument is that the contingent fee agreement should prevent any enhancement of the award; that is, that the agreement should serve as a "cap" on the award. See Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 718 (5th Cir.1974) ("In no event, however, should the litigant be awarded a fee greater than he is contractually bound to pay, if indeed the attorneys have contracted as to amount."). In 1975, the plaintiffs agreed to a contingent fee in which counsel was entitled to one-third of the total recovery, including the court-awarded fee. However, the parties amended their agreement before the second trial to provide counsel with an option to receive the reasonable attorney's fee determined by the court. Although the district court considered the contingent fee agreement as one of the twelve factors under Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir.1975), cert. denied, 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976),[7] it refused to limit the fee to $878,199.[8] The district court found this figure "would not compensate the plaintiffs' attorneys in a reasonable amount."
 
 
 43
 Texaco's argument has been discredited by recent decisions of the Supreme Court and this circuit. The presence of a fee agreement is simply one of many factors to be considered in the determination of a reasonable fee, and "[s]hould a fee agreement provide less than a reasonable fee ..., the defendant should nevertheless be required to pay the higher amount." Blanchard v. Bergeron, --- U.S. ----, ----, 109 S.Ct. 939, 944, 103 L.Ed.2d 67 (1989) (decided under section 1988), see also Quesada v. Thomason, 850 F.2d 537, 543 (9th Cir.1988) (among other reasons for rejecting private fee agreements as a "cap" on an award under section 1988, defendants "should not benefit from the private agreement by being permitted to pay anything less than a reasonable hourly wage.").
 
 
 44
 This court has held that a statutory award that exceeds the amount payable under a contingent fee agreement is acceptable, if a statute authorizes the award of a reasonable fee. See Hamner v. Rios, 769 F.2d 1404, 1408 (9th Cir.1985) (awarding attorney's fees under Sec. 1988) (citing Manhart v. City of Los Angeles, 652 F.2d 904, 909 (9th Cir.1981), vacated and remanded on other grounds, 461 U.S. 951, 103 S.Ct. 2420, 77 L.Ed.2d 1310 (1983)). Title 15 U.S.C. Sec. 15, like section 1988, authorizes the award of a reasonable attorney's fee.
 
 
 45
 Further, there is no reason to treat attorney's fees in antitrust cases under section 15 different from attorney's fees in civil rights cases under section 1988. We have recognized the public benefit of antitrust litigation. We stated that 15 U.S.C. Sec. 15's purpose "is to insulate treble damage recovery from expenditures for legal fees, consistent with section 4's purpose to encourage private persons to undertake enforcement of antitrust laws." Twin City, 676 F.2d at 1312. Therefore, the district court did not abuse its discretion by refusing to use the contingent fee agreement to limit the amount of the fee award.
 
 CONCLUSION
 
 46
 We have jurisdiction. No new notice of appeal was necessary after the district court ruled on a motion properly characterized under Rule 60(a). The district court did not abuse its discretion in setting the attorneys' fee award higher than the damages recovered. No proportionality is required. The court properly found the attorneys' fee award was not limited by the original fee agreement. The Supreme Court and this court have held that if a statute authorizes the award of a reasonable fee, the award is not limited by a previous contingent fee agreement.
 
 
 47
 The district court did not abuse its discretion by enhancing the fee by one-third for the risk of loss. However, the fees charged for the fee petition work should not have been enhanced. The case is remanded for an adjustment on this portion of the fee award, and for any adjustment to the costs awarded that the district court thinks necessary.
 
 
 48
 Under the discretion granted to us by Federal Rule of Appellate Procedure 39(a), Texaco shall bear the costs, since it lost a majority of the issues it presented on appeal. See Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 283-84, 66 S.Ct. 1105, 1110, 90 L.Ed. 1230 (1946).
 
 
 49
 AFFIRMED in part, REVERSED in part, and REMANDED.
 
 
 
 [1]
 Hasbrouck v. Texaco, Inc., 663 F.2d 930 (9th Cir.1981), cert. denied, 459 U.S. 828, 103 S.Ct. 63, 74 L.Ed.2d 65 (1982)
 
 
 [2]
 The lodestar is the amount derived from the reasonable hours expended multiplied by a reasonable hourly rate. City of Riverside v. Rivera, 477 U.S. 561, 568, 106 S.Ct. 2686, 2691-92, 91 L.Ed.2d 466 (1986)
 
 
 [3]
 Rule 52(b) provides, in relevant part, that "[u]pon motion of a party made ... after entry of judgment the court may amend its findings or make additional findings and may amend the judgment accordingly."
 
 
 [4]
 Rule 60(a) provides, in part: "Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party...."
 
 
 [5]
 The automatic damages rule allowed, but did not require, the jury to infer minimum damages based upon the illegal price differential times the quantity of the retailer's purchases. See Fowler Mfg. Co. v. Gorlick, 415 F.2d 1248 (9th Cir.1969), cert. denied, 396 U.S. 1012, 90 S.Ct. 571, 24 L.Ed.2d 503 (1970)
 
 
 [6]
 On appeal, this court reversed for failing to follow Fowler, which was the law in this circuit when the judgment n.o.v. was granted in favor of Texaco. Hasbrouck, 663 F.2d at 933
 
 
 [7]
 The factors to be considered are: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases
 
 
 [8]
 The first agreement would have entitled the plaintiff's counsel to this amount, which represents one-third of the trebled jury award of $1,349,700 plus the lodestar amount of $1,284,896