Gene C. BERNARDI, et al., Plaintiffs,

v.

Clayton YEUTTER, Secretary of Agriculture, Defendant.

No. C 73 1110 SC.

United States District Court, N.D. California.

Jan. 5, 1990.

Guy T. Saperstein, Saperstein & Seligman, Oakland, Cal., Nancy L. Davis, Judith E. Kurtz, Equal Rights Advocates, Inc., San Francisco, Cal., for plaintiffs.

Kathryn D. Ray, Dept. of Justice, Washington, D.C., for defendant.

## ORDER

CONTI, District Judge.

The plaintiffs' attorneys' present petition for attorney fees involves a single motion for contempt. The petition represents a classic case of over-lawyering and unnecessary piling on of hours, attorneys and assistants. ONE SINGLE competent attorney could have handled the underlying motion in a minimum of hours.

■ An attorney owes a duty to his client to do competent work; but that does not include an unreasonable, unnecessary and duplicative amount of effort in order to sustain billable hours.

This court will award reasonable attorney fees when the facts and circumstances warrant; however, this court has reviewed the documentation in the case and is quite concerned with the appropriateness of the billing procedure utilized by the plaintiffs' attorneys. The length of time in rendering this present Order is indicative of the court's concern re the attorneys' fees and costs submitted.

## I. BACKGROUND

This litigation results from charges of sex discrimination in the hiring and promotion policies of the Forest Service. In order to remedy any such discriminatory practices both parties in the litigation stipulated to a Consent Decree which instituted a complex plan whereby the defendant would follow agreed upon hiring and promotion directives. This court approved the Consent Decree and established a Decree Monitor who would be responsible for overseeing the Forest Service's compliance with the Decree.

The Consent Decree required the Monitor to file a series of multi-volume reports evaluating, on a semi-annual basis, the progress being made in extending equal employment and training opportunities to women, and accomplishing the goals of the Decree. Consent Decree, Art. V.F.1. In

addition, the Monitor was authorized to file a further report summarizing defendant's activities throughout the first five years of the Decree and was provided complete access to Forest Service records. Decree, Art. V.F.2. The Decree required defendant to pay the Monitor for these services which has resulted in payments of over $370,000.

In 1986 the plaintiffs filed a contempt motion in which they sought to establish the defendant's failure to comply with the Consent Decree. At that time the Monitor was preparing a report which would reach precisely that conclusion. From filing to judgment the motion took a year to litigate and, consistent with the Monitor's findings, the Magistrate found that the defendant had indeed failed to comply with the Decree.

As the prevailing party in the action the plaintiffs were entitled to attorneys' fees for their work. A fee petition asking for attorneys' fees in the amount of $549,197, plus costs in the amount of $6,591.02. was then submitted and approved by the presiding Magistrate. The Magistrate also approved fees and costs for work on the fee petition itself totaling $65,641.50.

In order to reach this supposedly reasonable figure the Magistrate characterized the motion as complex litigation and accepted all of the plaintiff's claimed hours and multiplied them by the plaintiff's counsels' claimed billing rate. No downward adjustment was made despite evidence that the claimed hours and rates were high for this type of work. Instead the Magistrate doubled the figure reached. Defendant has objected to the recommended fees and costs as being excessive and the matter is now before the court on defendant's appeal of the Magistrate's findings.

The court, having reviewed the matter *de novo*, and being fully aware of the Magistrate's recommendations, finds that the plaintiffs' counsels' hourly rate and number of hours billed to this matter were unreasonably if not unconscionably high. Furthermore, the court finds that plaintiff's counsels' billing records are inadequate and border on the highly questionable. Moreover this court finds that the Magistrate inappropriately doubled the plaintiff's already bloated fee request to a figure *far* higher than that needed to attract competent counsel to the case. Finally the court finds that the award of attorneys' fees to special counsel who did nothing but overlitigate an already outlandish fee petition was completely improper and would, if awarded, amount to a flagrant abuse of the court's power to award reasonable fees.

## II. DISCUSSION

### 1. *Nature of Plaintiffs' Counsel's Work*

■ To begin, the Magistrate referred to this proceeding as complex litigation. The plaintiff's counsels' declarants, providing evidence on what a reasonable hourly rate would be, referred to the rate for complex litigation. This court completely disagrees. This was not an involved Title VII class action, this was a single contempt motion. The Monitor had already gathered and then provided plaintiffs with all the underlying factual material. Unlike a Title VII class action there was no need for extensive discovery, statistical analysis, expert testimony or even much legal argument. To put it simply, the plaintiffs seek compensation for synthesizing five years of the Monitor's reports to establish the Forest Service's failure to fulfill the Decree. *See* Pls.'Memo, Exh. 2, Dec. of Kurtz at 3–4.

This court does not find such an activity to be complex litigation. In fact the Monitor, who is not an attorney, and does not have a staff of attorneys working for her, accomplished *exactly* the same task. Moreover the court finds that the plaintiffs had no excuse for undertaking an exhaustive reconstruction of the same record the Monitor was laboring to build. The court had instructed the Monitor to prepare a report—a report defendant also was compelled to pay for—and the plaintiffs concede that they duplicated the same work merely in order to obtain the results of the Monitor sooner. The end result: No complex litigation but wasteful repetitious fact gathering. With this in mind the court shall move to the next phase of inquiry.

### 2. The Number of Hours Claimed is Unreasonable

To handle a single motion for contempt, plaintiffs engaged five attorneys, three law clerks, and one paralegal and expended over 1,400 attorney and 800 law clerk and paralegal hours. This amounts to nearly 35 weeks of claimed attorney time and 20 weeks of claimed law clerk time for one contempt motion, which as the court noted, consisted mainly of unnecessary and repetitious fact gathering. After reviewing the plaintiffs' counsels' records the court finds that the plaintiffs' counsel expended far too much time on this matter, utilized too many attorneys and in general exercised very poor billing judgment.

To begin, plaintiff's counsel spent an excessive amount of time in meetings together. Ms. David and Kurtz, for example, each billed 67.5 hours for the same meetings, and sometimes as many as *four* persons billed for the same meetings. The court sees no reason to compensate for this duplication of effort.

And in the words of another court, "[a]n inordinate number of attorney hours were claimed for reviewing and analyzing ... records and preparing associated affidavits and memoranda, in view of the largely clerical skills needed for reviewing these records and the relatively uncomplicated law applicable to their analysis." *Jacobs v. Mancuso*, 825 F.2d 559, 563 (1st Cir.1987); *Transgo, Inc. v. AJAC Transmission Parts Corp.*, 768 F.2d 1001 (9th Cir.1985).

Moreover the court notes that much of plaintiff's counsels' submissions are couched in very general terms which give the court no basis on which to judge their propriety. For example Nancy Davis billed 149.1 hours between the dates of 6/11/85 and 4/23/86. However no less than 10 of those hours are billed to various phone conferences in which the subject matter discussed is not specified, and over 50 hours were billed for various meetings, again the subject matter of which is not given.

A fee applicant is not entitled to recover hours not reasonably expended, excessive, redundant, otherwise unnecessary or not properly billed to one's client. *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40. Moreover the court must "scrutinize the application for evidence of duplication of effort." *Abrams v. Baylor College of Medicine*, 805 F.2d 528, 536 (5th Cir.1986). In the present case the court has found *massive* duplication of effort, and excessive and improperly billed hours. The court shall therefore reduce the number of claimed hours by one half as the court feels this more than adequately represents a reasonable number of hours which may be billed to this matter.

### 3. The Claimed Hourly Rates Are Unreasonable

Plaintiffs' counsels' 1988 claimed theoretical rates are as follows: Nancy David—$225 per hour; Judith Kurtz—$210 per hour; Shauna Marshall—$175 per hour; Ellen Shapiro—$130 per hour; Teresa Friend—$125 per hour. The reasonableness of these hourly rates must be determined by reference to the experience, reputation, and ability of the attorneys in the community. *Kerr v. Screen Extras Guild*, 526 F.2d 67 (9th Cir.1975). Under this standard, the court finds such rates to be grossly excessive.

In this regard the court first notes plaintiffs did not offer a single declaration of any attorney who practices Title VII plaintiffs' litigation in order to support their claimed rates. Instead they have offered the testimony of a Title VII defense attorney, and two anti-trust attorneys who testified as to rates for "complex civil litigation". As noted this court does not find the case to have been complex litigation.

The court finds far more relevant, as evidence of appropriate hourly rates, the testimony of *two* comparable Title VII plaintiffs' attorneys produced by the defendant. One, Elaine Wallace, has 11 years experience in Title VII plaintiffs' work, teaches course on employment discrimination, serves as a pro tem judge, and maintains a regional reputation. *See* Def.'s Opp. Memo., Exh. A, Wallace Dec., Wallace Dec. *passim*. A fellow Title VII plaintiffs'

attorney says "she's the best" in her area of practice. Seidenfeld Depo. at 20.

Wallace testified that her rates of $140–$150 per hour are among the highest in the Northern District of California, Wallace Depo at 29, and should guide rates for two of the plaintiffs' counsel, Nancy Davis and Judith Kurtz. Wallace Further testified that rates above $175 per hour are "horrendous." Wallace Depo. at 53.

A second Title VII plaintiffs' attorney, Marc Seidenfeld, has seven years of experience in the field, in comparison with no prior years of experience for plaintiffs' attorneys Shauna Marshall and Teresa Friend. Def.'s Opp. Memo., Exh. C, Seidenfeld De.; Seidenfeld Depo. *passim.* He testified that the claimed rates are "certainly higher than my experience". Seidenfeld Depo at 24. His rates (regularly, $125 per hour; complex work, $150 per hour) are certainly relevant in establishing the market rates for plaintiffs' attorneys, Shapiro, Marshall, and Friend. *See also* Peterson Depo. at 15, Johnson Depo. at 12–14.

In sum, having considered all the evidence, the court finds the following rates to be appropriate as average rates for plaintiffs' counsel and support staff for the full time period involved in this litigation: David—$145 per hour, Kurtz—$135 per hour, Marshall—$115 per hour, Shapiro—$110 per hour, Friend—$105 per hour, Law Clerks—$55 per hour, Paralegals—$50 per hour.

### 4. *Proper Lodestar Figure*

■ The lodestar figure is the reasonable hourly rate multiplied by a reasonable number of hours spent on the matter. In the present case the lodestar figure is $112,765.80.[1] The court feels this to be a more than reasonable fee for the work accomplished and one which would attract competent counsel to the case.

### 5. *Plaintiffs Counsel Are Not Entitled to a Multiplier*

In 1983, the Supreme Court found that a court could make an upward adjustment of a lodestar based on certain limited factors. *Hensley v. Eckerhart,* 461 U.S. at 424, 103 S.Ct. at 1933. Later, the Court ruled that the lodestar was "presumptively reasonable" and allowed enhancement of the lodestar only in "rare" and "exceptional" cases. *Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1983). In 1986, in *Pennsylvania v. Delaware Valley Citizens' Counsel For Clean Air,* 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987) ("*Delaware Valley*" II), the Supreme Court, stated that although fee multipliers are permissible, *the trial court should not "enhance the fee award any more than necessary to bring the fee within the range that would attract competent counsel" Delaware Valley II,* 107 S.Ct. at 3081.

As noted this court feels that the lodestar is more than adequate to attract competent counsel and the plaintiff has not presented any relevant evidence to convince the court otherwise.[2] For example the plaintiff has not demonstrated a difficulty in obtaining legal representation in the relevant market if there was no risk enhancement. *Fadhl v. City and County*

---

1.

| Attorney | Billing Rate | Hours | Lodestar |
|---|---|---|---|
| Nancy Davis | $145 | 228.35 | $33,110.75 |
| Judith Kurtz | $135 | 231.25 | $31,218.75 |
| Shauna Marshall | $115 | 6.90 | $ 793.50 |
| Ellen Shapiro | $110 | 75.88 | $ 8,346.80 |
| Teresa Friend | $105 | 158.60 | $16,653.00 |
| Law Clerks | $ 55 | 114.30 | $ 6,286.50 |
| Paralegals | $ 50 | 327.13 | $16,356.50 |
| | | | $112,765.80 |

2. The government has presented the testimony of Elaine Wallace, a *plaintiff's* Title VII attorney, who states that multipliers are unnecessary to attract counsel to this sort of plaintiffs work.

*of San Francisco,* 859 F.2d 649, 650 (9th Cir.1988). The court in *Fadhl,* in approving an enhancement, looked at the individual case and noted that the plaintiff had approached 35 lawyers before one would take the case. *Id.*[3]

The recent Ninth Circuit case of *Hasbrouck v. Texaco, Inc.,* 879 F.2d 632 (9th Cir.1989) is one more sign that multipliers are meant only for the rare and exceptional case. In an anti-trust action that lasted 10 years, and involved two trials, an appellate decision, a petition for certiorari, and uncontroverted evidence by the past chairman of the Anti–Trust Section of the Washington State Bar that the relevant market compensates for contingency under a "very, very difficult" legal standard by 150–200%, the Ninth Circuit approved a multiplier of 30%. *Id.* Significantly, the court said: "We are satisfied that the evidence shows why the lodestar would not be unreasonable". *Id.*

In the present case the court finds that the lodestar approved by the court is more than reasonable. As such the court sees no need to enhance the lodestar in any way and the lodestar will stand as the appropriate fee.

### 6. *Fee Counsel Are Not Entitled To Fee*

■ Plaintiffs' counsel did not merely present their fee petition to the court, instead they hired outside counsel to present and litigate their fee petition for them. Of course it is possible that plaintiffs' counsel felt that such a monstrous fee request necessitated the hiring of special counsel. However these counsel, who are claiming almost $60,000 in attorney's fees—nearly one half of plaintiffs' lodestar—are entitled to no fees because they turned the fee

request proceeding, against all established law, into a "second major litigation." *Hensley,* 461 U.S. at 437, 103 S.Ct. at 1941.

In this regard, the court must first note that the fee petition was itself for a completely unreasonable sum. The petition, consisting of fourteen declarations and seven exhibits, almost seems designed to provoke litigation. Defendant properly sought limited discovery on this fee petition and was content to let the court decide the fee based on the papers filed. The litigation flurry began when fees counsel sought to depose defendant's five non-party declarants and harass them with extensive document production requests *solely* in preparation of a reply brief. Notwithstanding plaintiffs' opportunity for additional discovery, plaintiffs' offered *five new declarants* with their reply brief to which the defendant had no possible chance to respond.

All of this ended up in being litigated and the court, after examining the record, places the blame for this extensive litigation on the plaintiffs' counsel and fee petition counsel. Had a reasonable request been submitted perhaps all litigation over the request could have been avoided. Despite the outrageous nature of the request the court finds that defendant undertook a restrained and proper response. The plaintiffs fee counsel's counter-response, however, was overly litigious, and an unreasonable expenditure of hours and consequently the court will not award fee counsel any fees or costs.[4]

### 7. *Plaintiffs Claimed Costs Are Excessive*

■ Plaintiffs are claiming $6,591.02 in costs which represent, essentially, copying

3. The White plurality in the *Delaware Valley II* case stated, "Before adjusting for risk assumption, there should be evidence on the record, and the trial court should so find, that without risk enhancement plaintiff would have faced substantial difficulties in finding counsel in the local or other relevant market." O'Connor's concurrence stated that "I agree with the plurality that no enhancement for risk is appropriate unless the applicant can establish that without an adjustment for risk the prevailing party

'would have faced substantial difficulties in finding counsel in the local or other relevant market." *Delaware Valley II,* 107 S.Ct. at 3091.

4. This is not the first time that fee counsel have engaged in such activities. In *Real v. Continental Corp.,* 653 F.Supp. 736, 744 (N.D.Cal.1987), the court reduced plaintiff's underlying lodestar and awarded fees counsel Farnsworth, Saperstain, and Seligman no fees on fees because of their litigious conduct in the petition.

costs and the fee of a declarant who offered testimony solely on the issue of plaintiffs' fees. This court will deduct from plaintiffs' costs the declarant's fee and the court will allow the plaintiffs costs for one half of the 14,021 copies made at the reasonable copying charge of $.05 per page. Plaintiffs will be awarded costs of $350.52.

### 8. *Plaintiffs Are Entitled To No Future Schedule of Fees*

■ The Magistrate recommended a future fee schedule to be set up so that plaintiffs' counsel could reapply for fees every six months. The court will not follow such a recommendation and no future fee schedule will be adopted because plaintiffs have demonstrated no ability to exercise billing judgment in seeking a reasonable fee, or to refrain from duplicating the work of the Monitor. If and when plaintiffs prevail on any subsequent motion in this case, they can be awarded fees as "prevailing parties" under the fee-shifting statute, and reapply for fees at that time.

### 9. *Post Judgment Interest*

■ The Magistrate recommended that interest on the fee award to the plaintiffs' attorneys accrue from the date of her recommendation to this court. However 28 U.S.C. § 1961 allows interest on an award to run from the date of judgment. Interest shall accrue from the date of this Order, the final judgment in the matter.

## III. CONCLUSION

Plaintiffs are awarded $113,116.32 in fees and costs plus interest as compounded pursuant to 28 U.S.C. § 1961 to accrue as of the date of this Order.